[Civ. No. 1680.   Third Appellate District.—August 15, 1917.]

E. C. ARMSTRONG, Respondent, v. H. J. BARCELOUX, etc., Appellant, and W. A. HOSKING, Respondent, v. H. J. BARCELOUX, etc., Appellant.

OSTENSIBLE AGENCY—ELEMENTS.—In order to constitute an ostensible agency under sections 2300, 2317, and 2334 of the Civil Code, there must exist the element of some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists, and the element of a reasonable reliance thereon by such third persons.

ID.—ACTION FOR GOODS SOLD AND DELIVERED—INSUFFICIENT FINDING OF OSTENSIBLE AGENCY.—In an action for goods sold and delivered, a finding that defendant caused plaintiff to believe that another was his agent, and that plaintiff sold and delivered the goods to such person upon the faith of defendant being liable therefor, is insufficient to show the creation of an ostensible agency.

ID.—STATUTE OF FRAUDS—FAILURE TO RAISE ISSUE IN TRIAL COURT—APPEAL—POINT NOT AVAILABLE.—In such an action the defendant cannot on appeal contend that his promise was to answer for the debt of another, and therefore void under the statute of frauds because not in writing, where the point was not raised by objection to the evidence nor by motion for nonsuit.

ID.—AMENDMENT OF COMPLAINT—CHANGE OF CAUSE OF ACTION—FAILURE TO OBJECT IN TRIAL COURT—APPEAL—POINT NOT AVAILABLE.—On such appeal, the appellant cannot contend for the first time that an amendment allowed to the complaint changed the cause of action.

ID.—INTEREST—TIME.—In such an action, interest is properly allowable from the time of filing of the complaint.

APPEAL from a judgment of the Superior Court of Sacramento County.   Chas. O. Busick, Judge.

The facts are stated in the opinion of the court.

C. L. Donohoe, and W. T. Belieu, for Appellants.

J. J. Henderson, for Respondents.

BURNETT, J.—This is an appeal from the judgment rendered in each of the above-entitled causes, which by stipulation were tried at the same time, the issues and testimony in each being of a similar nature.

34 Cal. App.—28

The action by E. C. Armstrong, a corporation, consists of a single cause of action. W. A. Hosking sues as assignee for collection of the Golden Poppy Bakery & Confectionery Company, a copartnership; of the Sacramento Laundry, a corporation; of the Meredith Fish Company, a corporation; of the Peerless Ice Cream Company, a copartnership, and of the American Fish Company, a corporation. The claim of the American Fish Company was subsequently dropped.

Both complaints were originally against H. J. Barceloux and Amelia Pratt, also known as Aimee M. Wolf, also known as Mrs. G. M. Pratt, doing business under the firm name and style of Hotel St. Francis, and G. M. Pratt, upon the theory that Barceloux and Amelia Pratt formed a copartnership, but at the close of the case plaintiffs filed complaints to conform to proofs against "H. J. Barceloux, doing business under the fictitious name of Hotel St. Francis" upon the theory that Amelia Pratt was but the ostensible agent of Barceloux.

It appears that the Hotel St. Francis was owned and operated by the Plaza Realty Company, a corporation, the stock of which was owned by one Dr. Tryon and Barceloux, each owning fifty per cent. Up to February, 1915, Dr. Tryon acted as general manager, though in October, 1914, Mrs. Pratt became a sort of partial manager, watching out particularly for the interests of Barceloux. During this period plaintiffs and their assignors had been creditors of the Realty Company, each having an open and running account.

The stockholders being unable to agree, Barceloux, in February, 1915, ousted Dr. Tryon, and himself assumed personal control of the hotel. Dr. Tryon thereupon himself paid what debts were owed by the hotel, and obtained releases from creditors of all claims against the Realty Company. Barceloux, having no authority to act for the Realty Company, in order to facilitate his management, opened an account in the Fort Sutter National Bank in his own name, through which the finances of the hotel passed. From this time on Mrs. Pratt was in full control, doing all purchasing, engaging help, making necessary contracts, etc. Down to May 15, 1915, most of the outgoing checks were signed personally by Barceloux, but often checks were signed "H. J. Barceloux, by Aimee M. Pratt." It appears also that upon assuming control, Barceloux, together with Mrs. Pratt, visited different merchants with whom they dealt, among them E. C. Arm-

strong and Craddoc Meredith. Both Armstrong and Mere-
dith testify that Barceloux there told them that Mrs. Pratt
was in charge of the hotel, to let her have what credit she
asked and that he would be responsible. Barceloux claims
that he forcefully impressed upon their minds that he was
merely representing the Realty Company and intended to
assume no personal liability.

In May, 1915, the Plaza Realty Company sold their prop-
erty to the city of Sacramento, and on May 13, 1915, the said
city leased the hotel to Mrs. Pratt. In January, 1916, Mrs.
Pratt failed financially. It is the relationship that existed
between Barceloux and Mrs. Pratt during this period from
May to January that is in issue, for it is during this period
that the bills sued upon were contracted. Barceloux claims
to have notified the creditors through Mrs. Pratt of his with-
drawal from the business. It appears, however, that but
seven or eight at most, of some fifty creditors, were notified;
no balances were struck in the running accounts, nor were
any accounts settled as of May 15, 1915. Though the credi-
tors acknowledged some familiarity with the proposed sale to
the city through having read the newspapers, they deny hav-
ing received any notification or intimation of Barceloux's
changed relationship. On the other hand, the Barceloux
account in the bank was changed to "H. J. Barceloux, by
Mrs. G. M. Pratt," and henceforward and down to Novem-
ber 4, 1915, all checks in payment of goods sold the hotel were
signed "H. J. Barceloux, by Mrs. G. M. Pratt." Mrs. Pratt
was permitted to use Barceloux's name to avoid any attach-
ment that might result to a personal account of her own, and
she agreed to place the account in her own name as soon as
possible. Mrs. Pratt, however, neglected to do so until
November 4, 1915, when Barceloux, having learned that the
account still existed, insisted upon it. It appears that Barce-
loux visited the hotel at least once during this period, but
registered no protest as to the manner in which the accounts
were paid.

Upon these facts the lower court in both cases found, *inter
alia*, (2) "that the said defendant, H. J. Barceloux, by his acts
and conduct caused the said plaintiff to believe that Aimee
M. Pratt, also known as Mrs. G. M. Pratt, was the agent of
said H. J. Barceloux"; and (3) "that plaintiff sold and
delivered goods, wares, and merchandise to said Aimee M.

Pratt, also known as Mrs. G. M. Pratt, in good faith and in the exercise of ordinary care, and parted with value, upon the faith of the said defendant, H. J. Barceloux, being responsible for the acts of the said Aimee M. Pratt, also known as Mrs. G. M. Pratt.''

Appellant claims that the findings are unsupported by the evidence in either of the two cases, that the findings and judgment are against law, and that the judgment is not supported by the findings in the case.

One particular contention of appellant is that the court erred in that it failed to find as a fact that an agency existed, and found only that Barceloux caused creditors to ''believe'' that Aimee M. Pratt was his agent, and that creditors reasonably acted upon the faith thereof.

Section 2300 of the Civil Code provides: ''An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him.''

Section 2317 of the same code provides: ''Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.''

Section 2334 of the same code provides: ''A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof.''

These sections clearly set forth the two elements that constitute ostensible agency, viz., some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists, and a reasonable reliance thereon by such third persons. The second finding is indefinite in that it does not designate Barceloux's conduct either as intentional or wanting in ordinary care, one of which is required by the code. An allegation in the language of said finding if found in the complaint would undoubtedly constitute a demurrable defect, but no such averment is contained therein, the complaint not having been framed upon the theory of ostensible or actual agency, but that the goods were supplied to defendant directly. The case was tried, though, upon the theory, as before suggested, of agency, but it is plain that said finding may be disre-

garded as immaterial in the case. Eliminating it, there is sufficient support for the judgment in this finding: "That said defendant became indebted to plaintiff in the sum of $390.16, being the balance due upon an open account for goods, wares, and merchandise sold and delivered by plaintiff to defendant at the Hotel St. Francis, in the City of Sacramento . . . at his special instance and request within two years next preceding the filing of said complaint."

Indeed, the said defective finding is not directed to the particular subject matter of this action. It is entirely indefinite as to what goods, wares, and merchandise were sold to Mrs. Pratt "in good faith and in the exercise of ordinary care," and we may treat the finding as irrelevant to any issue made by the pleadings. For aught that appears to the contrary, it relates to different supplies, and we may, therefore, disregard it. Of course, "it is a well-settled rule that the findings of a fact made by the trial court are to receive such a construction as will uphold rather than defeat its judgment therein." (*Breeze* v. *Brooks,* 97 Cal. 77, [22 L. R. A. 257, 31 Pac. 742] ; *Perkins* v. *West Coast Lumber Co.,* 129 Cal. 427, [62 Pac. 57] ; *Paine* v. *San Bernardino etc. Co.,* 143 Cal. 654, [77 Pac. 659].) In this connection it may be said that it was not necessary for plaintiff to allege that the goods were sold and delivered to defendant through his agent, but under the general count evidence was admissible of either actual or ostensible agency. This was recognized by both parties and no objection was made to the course pursued.

Appellant's point that Barceloux's promise was to answer for the debt, default, or miscarriage of another and, therefore, void because not written, is without merit since he raised the question of the statute of frauds neither by objection to the evidence nor by a motion for a nonsuit. Besides, as we shall see, the liability of defendant as far as it appears in the record, rests upon a different theory, namely, that the credit was extended to him; that he, in other words, was the real debtor and not a surety or guarantor.

It seems that after the evidence was submitted the court permitted an amended complaint to be filed to conform to proof. The original pleading was against Barceloux and Pratt, and proceeded, as we have seen, upon the theory that a partnership existed between them, but the amended complaint charged Barceloux with sole liability. It is claimed

that this constitutes an entirely different cause of action, and such practice is not to be countenanced. But it is sufficient to say that no such objection was made at the trial, and it cannot be urged for the first time on appeal. (*Keefe* v. *Keefe*, 19 Cal. App. 310, [125 Pac. 929]; *Stockton etc. Works* v. *Glens etc. Co.*, 121 Cal. 167, [53 Pac. 565].)

The objection most seriously urged by appellant is that the evidence is insufficient to show his liability for the debt. It is earnestly contended that the goods were not furnished to Barceloux, and also that he cannot be held upon the theory that he is legally responsible for anything that was supplied to Mrs. Pratt.

As to the Armstrong claim herein, it may be said there is evidence that the agreement was directly between plaintiff and defendant. Armstrong testified that he did business, as far as the hotel was concerned, with Mr. H. J. Barceloux, that he met him personally at the hotel after Dr. Tryon left, that "Mr. Barceloux assumed the management of it and made arrangements with me to furnish goods for the hotel, that he would be responsible for it, pay the bills from that time on"; furthermore, that "at the time we arranged for the account he stated that she (Mrs. Pratt) would run the hotel, manage it for him; that he would not be here much of the time and she would do the ordering, looking after the business." We need not quote further from his testimony, as the foregoing is sufficient to show the primary liability of appellant. We may add that it is fair to say that Armstrong relied upon his contract with appellant, and that it was not repudiated by the latter until after the goods were all supplied by the former.

The Hosking case finds much less support in the evidence.

As to the Meredith Fish Company's claim, we find, however, sufficient evidence to support the finding of the court. Mr. Craddoc Meredith testified that he dealt directly with Mr. Barceloux, that the latter told him that he was interested in the hotel and that he would be responsible for supplies that the Fish Company would furnish to Mrs. Pratt. It further appears from his testimony that he was never notified that Mr. Barceloux would not be responsible for the claim. There is, in other words, a sufficient showing of an enforceable contract between the Fish Company and appellant.

The evidence seems entirely insufficient to support the claim of the Peerless Ice Cream Company or of the Golden Poppy Bakery. Neither had any dealings directly with Mr. Barceloux. In fact, he was not known to either of them. There is nothing to show that either firm was misled by the conduct of appellant, and there is no competent evidence that Mrs. Pratt was authorized to represent Mr. Barceloux as to either of these claims. Indeed these claimants base their contention against appellant upon the statement of Mrs. Pratt that ''the financial end was a rancher up the river, he would take care of the financial end,'' and upon the fact that she signed Barceloux's name to the checks. But manifestly a third person cannot be held to accountability by such conduct and declarations of a supposed agent. If such were the law, no one would be safe from the machinations of designing persons. As to the insufficiency of the evidence to support the claim of actual agency, *Mitrovich* v. *Fresno Fruit and Packing Co.,* 123 Cal. 379, [55 Pac. 1064], is in point, and bearing upon the failure of the case in material features of ostensible agency, *Harris* v. *San Diego Flume Company,* 87 Cal. 526, [25 Pac. 758], may well be consulted.

The claim of the Sacramento Laundry is sought to be upheld upon the ground of ostensible agency. It is doubtful whether the evidence is sufficient to support it. It is indeed quite unsatisfactory, but the question as to whether it is entirely inadequate may be passed, as the showing may be different upon another trial.

It is suggested that the court improperly permitted interest on the amounts due, but the allowance seems to have been made from the filing of the complaint. This appears to be the correct practice in this class of cases. (*Grangers' Union* v. *Ashe,* 12 Cal. App. 757, [108 Pac. 533]; *Heald* v. *Hendy,* 89 Cal. 632, [27 Pac. 67].)

The judgment in the case of ''E. C. Armstrong v. H. J. Barceloux, doing business under the fictitious name of Hotel St. Francis,'' is affirmed, and in the case of ''W. A. Hosking v. H. J. Barceloux, doing business under the fictitious name of Hotel St. Francis,'' is reversed, with direction to retry the issues as to all the claims except that of the Meredith Fish Company.

Chipman, P. J., and Hart, J., concurred.