[Civ. No. 2236.  Third Appellate District.—October 31 1921.]

H. H. NEFF, Appellant, v. MARIAN REDMOND, as Administratrix, etc., Respondent.

[1] PUBLIC OFFICERS—POWERS AND DUTIES—IMPUTED KNOWLEDGE OF —EFFECT OF AGREEMENTS.—Parties dealing with public officials are charged with knowledge as to the extent and limits of the powers and duties of such officials; and they cannot by their agreement impose upon a public official any additional duty than those provided by law.

[2] ID.—KNOWLEDGE OF DEPUTY SHERIFF—WHEN IMPUTED TO SHERIFF. The knowledge of a deputy sheriff is imputed to the sheriff only so far as it relates to the duties of his office and was acquired while acting within the scope of his authority.

[3] ID. — PAYMENT OF MONEY TO DEPUTY SHERIFF — KNOWLEDGE OF SHERIFF—OSTENSIBLE AGENCY—LIABILITY FOR MISAPPROPRIATIONS. The fact that the money was paid to the deputy sheriff at the

sheriff's office would not make the former the latter's ostensible agent, where the deputy sheriff in receiving the money was not acting within the scope of his employment, the sheriff was not present at the time, no record of the payments was made in the books of the office and no one communicated with the sheriff in reference to the matter until after the transaction was closed, and then the sheriff disavowed any knowledge of it; and the deputy sheriff having misappropriated the money, the sheriff was not liable therefor.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

Puter & Quinn for Appellant.

A. W. Hill and H. C. Nelson for Respondent.

BURNETT, J.—On April 28, 1916, plaintiff commenced an action in the superior court of Humboldt County against Eugene Woodin and others, as trustees of the California Redwood Shingle Company, a dissolved corporation, for the recovery of $1,928. An attachment was issued in said action and levied upon certain property held as such trustees by said defendants. Thereafter the parties to the action, together with one H. A. Poland, entered into a written agreement whereby it was provided that said attachment should be released and "the mill owned by the defendants and held under attachment herein may be operated by H. A. Poland." Then follow certain directions in reference to the disposition of the proceeds of said operation, from which we quote this: "That said H. A. Poland shall deposit with the sheriff the sum of one hundred dollars per month during the period of operation of said mill, said sum to be payable in advance, commencing on the 15th day of May, 1917. . . .

"That when the payments mentioned in subdivision second made to said H. H. Neff and to said sheriff shall amount in the aggregate to $1928, no further payments shall be made to said H. H. Neff or to said sheriff under this stipulation." A duplicate of this agreement was delivered to John F. Helms, the chief deputy or under-sheriff,

who thereupon released said attachment. Thereafter a sum of money aggregating $897.91 was paid in his office to said Helms, under said stipulation, in various installments at different times. Helms afterward disappeared without accounting for any of the money and the sheriff, Robert Redmond, refused to pay over or to admit his responsibility for any part of said fund. Thereupon the action was brought against said sheriff for said amount, the complaint alleging that "said defendant, Robert Redmond, agreed to keep the custody of said money, to-wit: the sum of $897.91 until said attachment suit was fully adjusted and settled."

While the action was pending Mr. Redmond died, and his administratrix was substituted as party defendant.

At the close of plaintiff's case the court granted a *nonsuit,* and from the judgment entered thereupon the appeal has been taken.

It is not claimed that the transaction was had directly with the sheriff or that he ever authorized his deputy, Helms, to enter into such an agreement or to become the custodian of such a fund. The liability of the sheriff, if any, must rest, therefore, upon the doctrine of agency or of knowledge and ratification of the agreement executed by Helms. It is plain that there was no actual agency in the transaction. Helms acted within the scope of his authority in releasing the attachment, but it was no part of the duty of the sheriff to become the custodian of this fund. It is entirely plain that in receiving said money Helms was not acting as deputy sheriff, since that is not a duty imposed upon him by law. In other words, he was acting without the scope of his authority, and the sheriff was not bound by Helms' act in receiving the money or in making any agreement concerning the same. [1] It is equally true that the parties by their agreement could not impose upon the sheriff any additional duty than those provided by law. It is the law, also, that parties dealing with public officials are charged with knowledge as to the extent and limits of the powers and duties of such officials. These propositions are not disputed, and it is sufficient in this connection to refer to *Fresno Nat. Bank* v. *Hawkins,* 93 Cal. 551 [27 Am. St. Rep. 221, 29 Pac. 233], among the many cases cited by respondent.

It cannot be and is not claimed, therefore, that Redmond was liable for the money by virtue of the fact that Helms received it and promised to account for it as deputy sheriff.

[2] It also follows that the knowledge of Helms in reference to the transaction would not be imputed to Redmond from the mere fact that the former was the latter's deputy. The rule is familiar that the knowledge of the agent is imputed to the principal only so far as it relates to the duties of his office and acquired while acting within the scope of his authority. Indeed, there is no possible ground for holding Redmond liable for the money by virtue of his office as sheriff.

[3] In fact, we understand from the brief and the oral argument of appellant that his claim is based solely upon the theory of ostensible agency. Section 2300 of the Civil Code provides: "An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." This definition has been amplified and explained in many of the decisions of the courts, among which we may refer to *Post* v. *City and County Bank*, 181 Cal. 238 [183 Pac. 802], wherein is quoted with approval from 2 Corpus Juris, page 464, the following: "The person sought to be bound must, by his words or conduct, have represented that the person assuming to act for him had authority to do so. Accordingly, an estoppel does not arise from the mere fact that the agent has acted for the principal on one or more previous occasions, but not under appearance of a general authority so to act, nor does the rule in question apply to acts of the agent outside of the scope of authority which the principal has caused him to seem to possess."

Nothing of the kind was shown in the case at bar. It is not claimed, indeed, that Redmond intentionally caused plaintiff to believe that Helms was Redmond's agent in the transaction. Nor was there any evidence tending to show the want of ordinary care in the premises. No fact was brought to the attention of Redmond that would put him upon inquiry as to said agreement. He had no reason to believe that Helms would attempt to charge him with liability for said money. Under the circumstances he

could not be expected to make inquiry as to whether such transaction had occurred any more than to ask Helms about any other private business arrangements that the latter might have made. The only possible circumstance that might indicate acquiescence and, therefore, by implication lend support to the theory of agency, is the fact, as we have seen, that the money was paid to Helms at the sheriff's office. The sheriff, however, was not present and there is no evidence that any record of said payments was made in the books of the office or that anyone communicated with the sheriff in reference to the matter until after the transaction was closed, and then the sheriff disavowed any knowledge of it. The mere payment in the sheriff's office would be no evidence that it was with the knowledge or consent of the sheriff.

It is true that some attempt was made to show other transactions of a similar nature to add to the probability that the sheriff authorized or at least acquiesced in the arrangement herein, but said incidents were of an entirely different character. One of these occurred in 1912 when a certain business was under attachment and so remained while one of the deputies from the sheriff's office took in the money while the business was being operated for a few days pending a settlement. In that case the attachment remained, while here it was released. Nor is there any evidence that plaintiff had any knowledge of that proceeding, and, of course, he could not have been induced to act as he did by reason of it.

The same thing may be said of the manner in which receipts for fees for the sheriff's services in civil cases were signed by Helms. This would be no evidence of the authority of Helms to represent the sheriff in receiving the moneys paid to said Helms for plaintiff, or to give such receipts as "J. F. Helms, under-sheriff." It may be added that there is nothing to show that plaintiff had any knowledge of how Helms was accustomed to sign said receipts for fees, and, hence, the circumstance could not have any tendency to create a belief in the mind of plaintiff that an agency existed.

"A party claiming that an ostensible authority existed must prove that he knew of the facts giving color of au-

thority to the supposed agent. A mere surmise that he knew them is not sufficient.'' (*Harris* v. *San Diego Flume Co.,* 87 Cal. 526 [25 Pac. 758]; *Gosliner* v. *Grangers' Bank,* 124 Cal. 225 [56 Pac. 1029]; *Armstrong* v. *Barceloux,* 34 Cal. App. 433 [167 Pac. 895].)

We think that respondent has aptly summarized the case as follows: ''Every payment made was to Helms personally; every conversation on the subject between the parties interested and their attorneys was with Helms individually. Redmond was not present on a single instance and in the nature of things could not be charged with knowledge as to every act and conversation of an unofficial character held between his various deputies and third persons, even though such conversations and acts took place within the confines of the county jail, or the sheriff's outside office. Any finding by the jury that Redmond had knowledge of this transaction or consented to it or acquiesced in it would be based on merest guess and conjecture with no evidence whatever to support it. . . .

''Ordinary diligence on the part of appellant would have caused him to ascertain the extent of Helms' authority in the premises and to have spoken to Redmond about the matter. He simply took for granted and assumed, without reason therefor, that the deputy was authorized to bind and represent the sheriff in a matter not connected in any way with the sheriff's duties.''

We may add that the record shows that appellant's attorneys had the utmost confidence in the honesty of Helms, and that is probably the reason why they were not more careful to consider the scope of his authority or to consult Mr. Redmond in reference to the matter. It is another case of misplaced confidence, and the one who failed to exercise due circumspection must suffer the loss rather than the entirely innocent party.

We are not unmindful of the rule that prevails in case of nonsuit, but we are satisfied that if the jury had found for plaintiff, the court would and should have set aside the verdict as entirely unsupported.

The judgment is affirmed.

Prewett, J., *pro tem.,* and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 29, 1921.

All the Justices concurred.

Lawlor, J., was absent; Richards, J., was acting.