[Civ. No. 2597. Third Appellate District.—April 25, 1923.]

## MIKE RESETAR et al., etc., Respondents, v. J. LEONARDI et al., Appellants.

[1] AGENCY—PLEADING—OSTENSIBLE AGENCY—THEORY OF TRIAL—APPEAL.—In an action based on a contract made by an alleged agent, defendants cannot for the first time on appeal contend that their objection to evidence of ostensible agency should have been sustained upon the ground that such agency being founded upon the principle of estoppel should have been alleged in the complaint, where the objection to the evidence was general and the case was tried upon the theory that both actual and ostensible agency were in issue.

[2] ID.—PLEADING—OSTENSIBLE AGENCY.—In an action based upon a contract made by an agent it is proper to allege that it was made by the principal, and the rule is the same where an ostensible agency based on estoppel is sought to be established.

[3] APPEAL—INTENDMENTS AND CONFLICTING INFERENCES—SUPPORT OF JUDGMENT.—All intendments and conflicting rational inferences must be resolved in favor of the judgment of the trial court.

[4] PLEADING—ESTOPPEL—KNOWLEDGE AT TIME OF FILING COMPLAINT. It is only where a party has knowledge at the time his complaint is filed that his cause of action must rest upon estoppel that he is required to plead it.

[5] AGENCY — SALE OF APPLES — SUFFICIENCY OF EVIDENCE. — In this action to recover the price of two carloads of apples, wherein the vital question was whether there was sufficient evidence to support the view that the person ordering the apples was either the actual or ostensible agent of defendants in the purchase thereof, the evidence was sufficient to support the conclusion of the trial court as to the agency.

APPEAL from a judgment of the Superior Court of San Joaquin County. D. M. Young, Judge. Affirmed.

The facts are stated in the opinion of the court.

John R. Cronin for Appellants.

Scott Rex and Smallpage & Rex for Respondents.

BURNETT, J.—Plaintiffs were wholesale apple merchants at Watsonville, California, and defendants were partners engaged in the produce and commission business under the

name of "Valley Fruit and Produce Company," in the city of Stockton. Plaintiffs claim to have sold and shipped to defendants three carloads of apples in October and November, 1920. The first of these cars, consigned by respondents to themselves, with a draft on appellants attached to the bill of lading, was paid for and is not involved in this controversy, except as the facts connected therewith may have some bearing upon the question of the liability of appellants for the other two carloads, which were shipped on open account and were never paid for. The complaint was to recover the purchase price of these, being in two counts in consequence of the two separate shipments. The two counts are similar in form and it was alleged in the first "that heretofore and on November 5, 1920, at the special instance and request of defendants, plaintiffs sold and delivered to defendants at Watsonville, Calif., certain goods, wares and merchandise, to-wit: a carload of apples, which was of the fair and reasonable worth and value and for which defendants promised and agreed to pay the sum of $1,750.95." The answer of defendants denied "that heretofore, and on November 5, 1920, or at any other time or at all, at the special instance and request of defendants, plaintiffs sold and delivered to defendants at Watsonville, California . . . a carload of apples," or "that these defendants, or either of them, or any person acting for and on behalf of these defendants or either of them, or acting for and on behalf of the partnership known as Valley Fruit and Produce Co., ever purchased from the plaintiffs herein . . . a carload of apples or any other goods, wares and merchandise." There was also a specific denial that they or anyone acting for them ever promised or agreed to pay to plaintiffs any sum of money whatever. The corresponding allegation of the second count of the complaint was denied in a similar manner. The trial was had without a jury and the findings and judgment were in favor of plaintiffs for the full amount claimed, to wit, the sum of $2,892.90, from which judgment the appeal has been taken.

It may be stated at the outset that the apples were ordered from plaintiff by one Thomas Vossos, and the important and vital question in the case is whether there was sufficient evidence to support the view that he was either the *actual* or *ostensible* agent of defendants in the purchase of

the apples. The main argument of both parties, presented skillfully and elaborately, is addressed to this consideration and we have given it careful attention. Before noticing it specifically we observe the apparent failure of appellants to attach adequate significance to the authority and responsibility of the trial judge in determining the weight of the evidence and the credibility of the witnesses, and to the established limitation upon the power of an appellate court to overthrow the findings of the trial court. The rule itself, of course, is so elementary and familiar as to need no restatement.

[1] Preliminarily to the main discussion we may also advert to the contention of appellants that their objection to evidence of *ostensible* agency should have been sustained upon the ground that, such agency being founded upon the principle of estoppel, it was necessary for plaintiffs to allege it.

We see no merit in the claim. In the first place, appellants should have made this specific objection, if they intended to urge it subsequently. They contented themselves with the general objection that the evidence is "incompetent, irrelevant and immaterial" and simply repeated it in response to the question of the trial judge: "Is there anything other than your general objection, can you direct my attention to anything of the reason why you object?"

It is true that to one or two of the questions the specific objection that the complaint did not allege "agency" was made, but nothing said about estoppel or *ostensible* agency. It is quite apparent that this criticism is of that class which cannot avail a party unless timely attention is called to the supposed defect in the court below. In view of the record it may be regarded as a case tried upon the theory that both the actual and the ostensible agency of Vossos were in issue and the situation is one for the application of the principle enunciated in *Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 318 [147 Pac. 90]; *Cushing* v. *Pires*, 124 Cal. 663 [57 Pac. 572]; *Busch* v. *Los Angeles Ry.*, 178 Cal. 536 [2 A. L. R. 1607, 174 Pac. 665], and many other decisions.

[2] Moreover, in an action based upon a contract made by an agent it is proper to allege that it was made by the principal. (*McGibbon* v. *Schmidt*, 172 Cal. 70 [155 Pac.

460]; *Montgomery* v. *Dorn,* 25 Cal. App. 666 [145 Pac. 148].)

If made through an ostensible agent, the effect in law is the same as though made by an authorized agent, and there seems to be no good reason why the rule of pleading should not be the same. Indeed, this view is in harmony with the authorities cited by respondents of which we may mention *Robinson* v. *American Fish etc. Co.,* 17 Cal. App. 212 [119 Pac. 388]; *Meister & Sons Co.* v. *Wood-Tatum Co.,* 26 Cal. App. 584 [147 Pac. 981]; *Armstrong* v. *Barceloux,* 34 Cal. App. 433 [167 Pac. 895]; *Leavens* v. *Pinkham & McKevitt,* 164 Cal. 242 [128 Pac. 399]. Statements apparently to the contrary are found in some of the decisions, among which is *Fritz* v. *Mills,* 12 Cal. App. 113 [106 Pac. 725], but they should not be regarded as consistent with the principles of our modern liberal system of pleading and practice. It may be added that the cases cited by appellants in this connection are distinguishable from the situation herein, but we forbear specific notice of them other than to say that in the Fritz case, *supra,* it was not alleged that the contract was executed by defendant, but that she *"through her duly authorized agent* executed her agreement in writing, wherein the said defendant agreed to sell and the plaintiff agreed to buy" the premises in controversy. Plaintiff having elected to allege that the act was performed by her *duly authorized agent,* and thus specifically confining her cause of action to a certain condition could not complain if the court limited the proof to that peculiar situation. The case is different, however, where the ultimate fact is alleged that the contract was made by the defendant. In such instance the allegation may be supported by proof that it was executed directly by the defendant or through her *authorized* or *ostensible* agent, as that term is defined in sections 2300, 2317, and 2334 of the Civil Code. Moreover, there is room for the claim that respondents had no reason to believe, until the trial was well under way, that the question of ostensible agency would arise. [3] As to this there may be ground for the opposing contention, but we cannot ignore the rule that all intendments and conflicting rational inferences must be resolved in favor of the judgment of the trial court. [4] Hence, it is fair to apply the well-settled doctrine that it is only where a

party has knowledge at the time his complaint is filed that his cause of action must rest upon estoppel that he is required to plead it. (*Donnelly* v. *San Francisco Bridge Co.,* 117 Cal. 417 [49 Pac. 559] ; *Llewellyn Iron Works* v. *Kinney Co.,* 172 Cal. 210 [155 Pac. 986].) In the former it is said: "Although the doctrine of ostensible agency rests upon estoppel the plaintiff is not required to plead such estoppel, or to aver the facts constituting ostensible agency, where he believed and had come to believe that the negligent person was in fact the agent of the defendant; and a party is not bound to plead an estoppel where he is without knowledge that his claim must ultimately rest upon it."

The discussion of this point is already too greatly prolonged and we may dismiss it with the additional reflection that most of the evidence along this line, to which objection was made, was admissible as tending to show *actual* as well as *ostensible* agency, and even if the complaint was defective in said particular, manifestly it resulted in no prejudice to defendants.

[5] But the vital question in the case is obviously whether the evidence was sufficient to support the conclusion of the trial court as to the agency of Vossos. In the effort to maintain their position respondents have recited many circumstances relating to the various shipments, which, they claim, in their cumulative force, furnish the requisite support for the finding, and we shall set them forth substantially as thus exhibited. In doing so we naturally favor respondents where there is any conflict in the evidence.

Vossos was admittedly an employee of defendants until the first week in October. He did the purchasing for the firm and was the only person connected with them who bought and sold apples and like produce. In his work for appellants he used a Ford automobile belonging to them and on which car was painted the name of the firm, "Valley Fruit & Produce Co., Stockton." This car was sold to Vossos in the early part of October. Prior to August 30, 1920, respondents had heard that appellants were a reliable firm and on that date the former wrote to the latter, quoting prices on apples and soliciting an order. No answer to the letter, however, was received. On October 22d, Vossos came to respondents' place of business at Watsonville, driving said car with said firm name still painted upon it,

61 Cal. App.—49

handed out the printed business card of appellants with his own name rubber-stamped thereon, and negotiated for and purchased from Mike Resetar a carload of apples for the Valley Fruit and Produce Co., stating at the same time that he was "of the Valley Fruit and Produce Co." This carload was shipped out on October 25th and the next day respondents wrote and mailed a letter to appellants in which they stated:

"You will find enclosed invoice to cover shipment of apples to you yesterday in car D. L. & W. 35810. We have drawn a draft against you for the total amount of the invoice. We hope that the fruit will give you entire satisfaction.

"Thanking you for the order and hoping that we may have the pleasure of filling more orders for you this season, we remain," etc.

A draft for $1,317.50 on the Valley Fruit and Produce Company was attached to the bill of lading and forwarded through the Bank of Watsonville for collection. The bill of lading showed that the car was consigned by respondents to themselves with directions to "advise Valley Fruit & Produce Company, Stockton, California." The draft and bill of lading were received by the First National Bank of Stockton on October 27th and the collection clerk of the bank on that day sent the Valley Fruit and Produce Company a written notice by mail, advising them of the receipt by the bank of said instruments. Defendants were also notified by telephone and on the following day one Cochello, a groceryman of Stockton, paid the draft, he testifying at the trial that he purchased the apples from Vossos. When the car arrived at Stockton on October 28th the notice and disposition clerk of the Southern Pacific Company, Miss Eberhart, phoned the information to the Valley Fruit and Produce Company and talked with a man who gave his name as Tom, and at the same time she made out and mailed a postal card notice, addressed to appellants, stating that the car had arrived and the same would be delivered to them on payment of the freight and surrender of the bill of lading. On the same day this carload of apples was delivered to Cochello on payment of the freight and surrender of the bill of lading. She testified that she had no recollection of giving any notice to anyone other than defendants of the

arrival of this car. It thus appears that appellants were notified four different times of the arrival of the draft and bill of lading and the carload of apples—by written notice and phone from the First National Bank of Stockton and by postal card notice and phone from the Southern Pacific office.

As to the second carload, early in November Vossos again appeared at respondents' place of business, traveling in the same automobile. He again ordered a carload of apples, requesting that it be billed on open account to appellants. They were shipped November 5th and on the next day plaintiffs wrote and mailed to defendants a letter in reference to the shipment, inclosing an invoice or bill showing the purchase price to be $1,750.95 and the bill of lading indicating that the car was consigned by respondents directly to appellants. This car arrived at Stockton November 8th and Miss Eberhart notified defendants, both by phone and by postal card, of its arrival. After the second car arrived, Mr. Leonardi, who seems to have been the moving spirit and the active manager of the defendant firm, came into the Southern Pacific office and complained about the delay in the delivery of the car, such delay having been caused by the fact that the bill of lading was not presented when the first effort was made to secure the delivery of the apples. We may pause here to state that this is one of the strong and decisive facts in the case and we have given particular attention to the claim of appellants that it was not sufficiently shown, but the testimony of two witnesses is amply sufficient, having been fully credited as it undoubtedly was by the trial judge, to justify the conclusion that Leonardi made such visit and such complaint. We quote from Miss Eberhart's testimony as follows: "Q. Well prior to the arrival of these three cars had you seen Mr. Leonardi to know him by sight? A. Yes, sir. Q. By Mr. Leonardi I refer to the Mr. Leonardi whom the testimony in this case shows to be a member of the partnership doing business as the Valley Fruit and Produce Company? A. Yes, sir. Q. The same man, did you see him in connection with any one of these three shipments? A. As I remember I did. Q. What do you remember? A. As near as I can remember Mr. Leonardi came in . . . after the second car arrived and complained about the delay on the car—delay

in delivery of the car." She further described the appearance of said person, and the record further shows: "Mr. Rex: Q. One more question, can you identify Mr. Leonardi in court here? A. Yes, sir. Q. Who is he? A. That gentleman sitting over there next to Mr. Cronin. Q. That is all? A. I know him by sight. Mr. Rex: It will be admitted that the person pointed out by the witness is the defendant Leonardi in this case. Mr. Cronin: Yes, sir."

W. J. Fannon, who was employed in the freight office of the Southern Pacific Company, after being asked if he had seen Mr. Leonardi before, testified that he had and that "on the delivery of the second car of apples that is the man that surrendered the bill of lading to me." Furthermore, the record of his testimony shows: "Q. Had there been a previous effort to get those apples out without surrender of the bill of lading? A. Yes, sir. Q. And that you declined to permit? A. Yes, sir. Q. And subsequently was it on the same day that they reappeared with the bill of lading? A. Yes, sir. Q. And when the bill of lading was surrendered you say that it was Mr. Leonardi who was there? A. Yes, sir."

It is true that he appears to have been a cautious and conscientious witness and stated that when he first came into the courtroom he was not sure that Mr. Leonardi was the man, but he added: "This gentleman here is evidently the man that surrendered the bill of lading; of course, he was dressed different then, in his working clothes, he did not have his glasses on." He further stated that he had a "recollection of him coming in there and the reason that I remember is that because he tried to raise a row with some of the S. P. employees there because they refused to deliver this car of apples to the other man without the surrender of the bill of lading, otherwise I would not have probably ever been able to recognize the man." Thus was the identification sufficiently positive to warrant a finding that Leonardi was the man. It is also rather significant that Leonardi, when on the witness-stand, did not contradict this testimony of Miss Eberhart and Mr. Fannon. In reference to the matter he was asked only this question: "Did you call at the Southern Pacific Company to pay for a carload of apples, pay the freight on a carload of apples that arrived on or about the 8th of November, 1920?" and he an-

swered, "No, sir," but neither of these witnesses had testified that he paid the freight on the car. It may have been an inadvertence of counsel, as suggested by him, that the witness was not called upon categorically to deny the testimony of said witnesses for plaintiffs, but we are guided, of course, by the record as it is, and that record justifies the assertion that the testimony of said witnesses was not even challenged by defendants. The freight on this car was paid to the witness Fannon on November 8th by one Sourbis of the Zante Grocery Company, a relative of the Vossos brothers, who testified that he paid the freight at the request of Tom Vossos.

As to the third and last car, Vossos again visited the place of business of respondents about November 20th and the course of procedure was about the same as before except that Mike Resetar, with whom he dealt, was unable to state whether Vossos came by automobile or not. He bought another carload for the defendants, which was shipped by respondents November 22d consigned to appellants. Substantially the same course was pursued as before in sending letters and notices to defendants as to the shipment, but they made no reply. When Vossos negotiated for this purchase Mike Resetar told him that they could not sell unless he would pay for the other car as they needed the money, but on his assurance that upon his return to Stockton he would mail a check for the amount the third carload was shipped and billed open. Miss Eberhart called Vossos by phone at the Valley Fruit and Produce Company's place of business, notified him of the arrival of the car, and, at his instruction, placed the notation on the way-bill to put the car on the team track for immediate delivery. On November 26th Vossos gave a receipt for this car.

We are not unmindful of the fact that agency cannot be established by the declarations of an agent; indeed, they are not admissible for that purpose. This rule was recognized by the trial court and the conversations between Vossos and plaintiffs were admitted only to show that respondents actually sold the apples, not to Vossos, but to defendants. It is not doubted that this was entirely proper. It may be granted also that some of the circumstances upon which respondents rely, considered separately, are of little significance, but in the aggregate they create a strong probability

that Vossos was authorized to represent defendants in the purchase of the apples. Indeed, from a reading of the record it is difficult to reach any other conclusion, notwithstanding the asseverated denials of the defendants.

A few facts stand out prominently which we may recall with some particularity. Leonardi admitted that he received a telephone notice from said First National Bank of the fact that the carload of apples of October 26th had arrived. If he did not know that the shipment was upon the order of Vossos it is almost unbelievable that he would not have inquired why such freight should be intended for his firm. Appellants say that they were under no legal obligation to do so, but be that as it may, applying the ordinary standards of human conduct, the trial court could hardly resist the conclusion that his failure to make inquiry carried with it the implication that he knew of the supposed agency of Vossos. Having this knowledge it was, of course, his duty to repudiate such agency if it did not exist and to notify the consignor in order that he might not be thereafter imposed upon. But the more rational inference would be that Vossos was really the agent of the firm.

Another fact of equal persuasive force is the inquiry of Leonardi as to the delay in the delivery of the second carload. This is entirely inconsistent with the view that he had no knowledge of the part of Vossos in the transaction. The significance of this circumstance is indeed recognized by appellants and they question the sufficiency of the identification of him by the witnesses, but they said he was the man and we cannot hold that they were mistaken.

Another circumstance of monumental potency is the silence of defendants after the receipt of the numerous letters and notices which were sent to their address. It is true that defendants denied that they received them, but their story as to the delivery of the mail naturally excites incredulity and doubtless was rejected by the trial court as improbable. Subdivision 24 of section 1963 of the Code of Civil Procedure places among the disputable presumptions the following: "That a letter duly directed and mailed was received in the regular course of the mail." This presumption is evidence and under the peculiar circumstances of the case the court was entirely warranted in following the presumption rather than the testimony of the

defendants. Manifestly, if they received these letters and notices they would be put upon inquiry, and as honest men they would notify the consignor, if, as a matter of fact, Vossos was not their agent.

The last circumstance which we emphasize is disclosed by the testimony of Miss Eberhart that when the last carload arrived on November 26th she called up the defendants at their place of business and Mr. Vossos responded. Why should he be there to answer messages and to attend to business transactions of that kind unless it were with the knowledge, acquiescence, and authority of the defendants? This was nearly two months after appellants declared that the connection of Vossos with the firm had ceased, but this circumstance might justly be regarded by the trial court as casting discredit upon their testimony.

We have not overlooked the discussion of the legal propositions involved, but they are simple and fundamental and demand no specific notice.

It may be that Vossos was a consummate rascal, as claimed by appellants, and that they are the unfortunate victims of his evil machinations, but having reached the conclusion that the material findings of the trial court are supported, that is the end of the matter as far as we are concerned.

The judgment is affirmed.

Finch, P. J., and Hart, J., concurred.