[Civ. No. 8928.    Fourth Dist., Div. Two.    Dec. 4, 1968.]

ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Cross-complainant and Appellant, v. FRED R. LAN FRANCO, as Administrator, etc., et al., Cross-defendants and Respondents.

John J. Balluff, Matthew H. Witteman, Henry M. Moffat, Neal W. McCrory, John J. Schimmenti, Charles D. Swanner and John Neil Stanley for Cross-complainant and Appellant.

Chase, Rotchford, Drukker, Bogust & Tucker, Lawrence O. de Coster, Murchison, Cumming, Baker & Velpmen, Ronald R. McQuoid and Henry F. Walker for Cross-defendants and Respondents.

KERRIGAN, J. — This personal injury litigation commenced when plaintiff Beatrice Trice[1] filed a suit for damages against Atchison, Topeka & Santa Fe Railway, a corporation [Santa Fe], Fred R. Lan Franco, administrator of the estate of Bernard R. Lan Franco, deceased [Lan Franco], and Whitehead Construction Co., a corporation [Whitehead]. Plaintiff's complaint contained the following summary of allegations: On December 22, 1965, she was a passenger on a train owned and operated by Santa Fe, popularly known as the "San Diegan"; the train was involved in a collision with a truck at the Santa Fe and State College Boulevard crossing in the City of Anaheim; the truck was owned and operated by Bernard R. Lan Franco, who sustained fatal injuries in the collision; Bernard R. Lan Franco was employed by Whitehead Construction Co. at the time of the accident and was acting within the scope of his employment; Fred R. Lan Franco was subsequently appointed administrator of the decedent's estate; plaintiff sustained personal injuries as a consequence of the concurrent negligence of Santa Fe, Lan Franco and Whitehead Construction Co. in the operation, maintenance and control of the truck and train.

Santa Fe filed a cross-complaint against Lan Franco and Whitehead. In its cross-action Santa Fe charged: cross-defendants were the owners of the truck; the decedent-driver was a permittee or employee of Whitehead; cross-defendants so negligently entrusted, managed, maintained, drove and operated the truck along State College Boulevard and onto the Santa Fe grade crossing as to cause it to collide violently with the San Diegan; the plaintiff-passenger [Trice] filed suit against the Santa Fe to recover damages for injuries sustained in the collision; Santa Fe owed the paying passenger the duty to exercise the highest degree of care for her safety

---

[1]Plaintiff is not a party to this appeal.

and protection; the accident was solely and proximately caused by the negligence of the cross defendants; the cross-defendants were primarily liable and responsible for the injuries sustained by cross-complainant's passenger; ". . . If Plaintiff recovers judgment against [Santa Fe] . . . it will only be by virtue of the relationship between Plaintiff, as a paying passenger, and Cross-Complainant, as a common carrier, and the fact, if it be a fact, that Cross-Complainant would have been found to have been secondarily liable for Plaintiff's injuries and damages"; cross-complainant is entitled to indemnity and restitution from, and a judgment against, cross-defendants for the amount of any judgment rendered against Santa Fe, together with reasonable attorneys' fees and costs incurred in defending the main action.

In its second cause of action, Santa Fe incorporated all the allegations of the first cause, together with averments that a controversy exists between the cross-complainant and the cross-defendants inasmuch as Santa Fe maintains that the cross-defendants have a duty to indemnify and defend Santa Fe in the principal action and to pay any judgment which may be rendered against it, and cross-defendants deny any such obligation.

The court sustained, with leave to amend, the separate demurrers filed by the cross-defendants Lan Franco and Whitehead, but Santa Fe elected not to amend. When Santa Fe failed or refused to amend, cross-defendants filed separate motions to dismiss the action. The superior court granted both motions and the cross-action was ordered dismissed.[2]

The sole issue on review is whether the cross-complaint states a cause of action for noncontractual implied indemnity inasmuch as no contractual relationship existed between the parties.

Where two or more parties are legally responsible for a claimant's injuries, the issue of loss allocation between the joint tortfeasors necessarily arises. The so-called "common

[2]Santa Fe appeals "from the order granting motion to dismiss the Cross-Complaint." However, the appeal was apparently premature as to the cross-defendant Whitehead inasmuch as only a minute order granting Whitehead's motion to dismiss had been entered at the time Santa Fe filed notice of appeal. An appeal does not lie from a minute order granting a motion to dismiss for failure to amend, but only from the written or signed order of dismissal. (Code Civ. Proc., § 581d.) Nevertheless, the respondent-Whitehead has stipulated that a formal order of dismissal was entered in the superior court subsequent to the time that Santa Fe filed its notice of appeal, and has further agreed that the appeal is from the judgment [order] of dismissal.

law'' rule would leave the loss where the victim has chosen to impose it. Contribution would apportion the loss pro rata among the legally responsible parties. Indemnity would shift the entire loss from one liable party to another. (See Comment, *The Allocation of Loss Among Joint Tortfeasors*, 41 So.Cal.L.Rev. 728; *Alisal Sanitary Dist.* v. *Kennedy*, 180 Cal. App.2d 69, 75 [4 Cal.Rptr. 379].)

While under common law neither contribution nor indemnity were available as between joint tortfeasors (*Merryweather* v. *Nixan* [K.B. 1799] 101 Eng.Rep. 1337 [8 T.R. 186]; *San Francisco Unified School Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434, 444 [328 P.2d 785]), contribution is available in a minority of jurisdictions, generally by virtue of statute. (Davis, *Indemnity Between Negligent Tortfeasors: A Proposed Rationale*, 37 Iowa L.Rev. 517; 2 Witkin, Summary of Cal. Law (1960) Torts, § 21, p. 1191.)

In 1957 California adopted legislation providing for contribution among joint tortfeasors. (Code Civ. Proc., §§ 875-880.) It is now provided that where a money judgment has been rendered jointly against two or more defendants in a tort action, there shall be a right of contribution among them, subject to certain limitations. (Code Civ. Proc., § 875.) The pro rata share of each tortfeasor judgment debtor is determined by dividing the entire judgment equally among all of them. (Code Civ. Proc., § 876.) However, the California contribution statute expressly provides that the rights created thereby ''. . . shall not impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them.'' (Code Civ. Proc., § 875, subd. (f).)

Generally, indemnity becomes a consideration when one person is exposed to liability because of what another person did. ██ ''The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus the determination of whether or not indemnity should be allowed must of necessity

depend upon the facts of each case." (*Herrero* v. *Atkinson,* 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]; *Ralke Co.* v. *Esquire Bldg. Maintenance Co.,* 246 Cal.App.2d 141, 144-145 [54 Cal.Rptr. 556].) ■ The right to noncontractual implied indemnity rests upon *equitable* considerations. (See *Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367, 378 [25 Cal.Rptr. 301].) The right is restitutional in nature and is based on inherent injustice. (Davis, *Indemnity Between Negligent Tortfeasors: A Proposed Rationale, supra,* 37 Iowa L.Rev. 517, 538.)

A distinction exists between contribution and indemnity in that in the former the parties liable for the tort are said to be *in pari delicto* and the damages are equally divided, but in the latter, the parties are not deemed to be *in pari delicto* and the entire burden is placed upon one of them. (See Prosser, Torts (2d ed. 1955), p. 249; Annot. 88 A.L.R.2d 1355, 1356-1357.) ■ Where the fault of each is equal in grade and similar in character, implied indemnity is not available since no one should be permitted to found a cause of action on his own wrong. (*Herrero* v. *Atkinson, supra,* 227 Cal.App.2d 69, 74.)

The cases are not always helpful in determining whether equitable indemnity lies. The test utilized in applying the doctrine are vague. Some authorities characterize the negligence of the indemnitor as "active," "primary," or "positive," and the negligence of the indemnitee as "passive," "secondary," or "negative." (See Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 U.Pa.L.Rev. 130, 156; Davis, *Indemnity Between Negligent Tortfeasors: A Proposed Rationale, supra,* 37 Iowa L.Rev. 517, 539.) Other authorities indicate that the application of the doctrine depends on whether the claimant's liability is "primary," "secondary," "constructive," or "derivative." (Prosser, Torts (2d ed. 1955), pp. 249-251; see 28 Mo.L.Rev. 307, 308-309.) These formalizations have been criticized as being artificial and as lacking the objective criteria desirable for predictability in the law. (See Leflar, *supra,* p. 156; Davis, *supra,* p. 539.)

■ Notwithstanding the uncertainty generated by the foregoing terminology, two critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in California: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured party; and (2) it must appear that the claimant *did not actively nor affirmatively participate* in the

wrong. (See Molinari, *Tort Indemnity in California*, 8 Santa Clara Law. 159, 166.)

Whether a claimant can recover under the theory of equitable indemnity depends on whether he *participated* in some manner in the conduct which caused the injury. (*King v. Timber Structures, Inc.*, 240 Cal.App.2d 178, 182 [49 Cal. Rptr. 414]; see *Cahill Bros., Inc. v. Clementina Co., supra*, 208 Cal.App.2d 367, 382.) Implied indemnity is usually precluded by the indemnity claimant's active participation in the wrong. (*Goldman v. Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40, 44 [41 Cal.Rptr. 73, 396 P.2d 377]; *Aerojet General Corp. v. D. Zelinsky & Sons*, 249 Cal.App.2d 604, 608 [57 Cal.Rptr. 701]; *Progressive Transp. Co. v. Southern Cal. Gas Co.*, 241 Cal.App.2d 738, 741 [51 Cal.Rptr. 116].)

Santa Fe maintains that the plaintiff's action against it is based on a carrier's statutory duty to exercise the highest degree of care for the safety and protection of a paying passenger (Civ. Code, § 2100; *Kline v. Santa Barbara etc. Ry. Co.*, 150 Cal. 741, 745 [90 P. 125]), and that its duty is therefore different in character and kind than that imposed upon the truck driver and his employer inasmuch as they simply owed a duty of ordinary care to the plaintiff. Consequently, Santa Fe argues that it necessarily follows that its cross-complaint was sufficient in that it set out the disparity of duties which could result in a determination that it was only "passively" negligent because of its greater duty of care, and that the truck driver and his firm were "actively" negligent.

In support of its position, Santa Fe relies on *United Airlines, Inc. v. Wiener*, 335 F.2d 379, wherein the federal appellate court ruled that equitable indemnity applied in a situation involving a high-speed, mid-air collision between a U.S. military jet and a commercial airliner, and United was held to be entitled to indemnity from the government for damages sustained for the wrongful death of the commercial liner's passengers, notwithstanding that the trial court had determined that contribution was the proper remedy.

In *United, supra*, the U.S. jet pilot was negligent in failing to avoid the air corridors regularly used by commercial carriers. United's pilot was also negligent in that he failed to see and avoid the military craft and failed to have knowledge of proper jet procedures. The reviewing court, in holding that United was entitled to indemnification from the government

stated: ''United's duty to [its passengers] . . . was to exercise the highest degree of care; the government's duty was to exercise ordinary care. The government's negligent acts occurred literally from the start to the finish of this tragic incident. The cumulative effect of these negligent acts was to dispatch United's [plane] . . . and the government's . . . jet . . . into the same area without warning to those in control of either craft. . . . United's pilots . . . could have seen the jet and, in discharge of the obligation to exercise the highest degree of care . . . should have seen and avoided the jet. In view of the disparity of duties, the clear disparity of culpability, the likely operation of the last clear chance doctrine and all the surrounding circumstances, . . . we hold that there is such difference in the contrasted character of fault as to warrant indemnity in favor of United. . . .''

The federal tribunal in *United* thus rejected the traditional concepts of primary and secondary liability when it determined that United, although actively negligent, could recover damages by way of indemnity from the Government. The court based its rationale on the premise that where there is a disparity of the gravity of fault or a difference in the contracted character of the established fault, recovery is justified on the basis of unjust enrichment. In effect, the reviewing court in *United, supra,* compared the active negligence of the tortfeasors and determined that there was a difference in the degree of culpability. (See Molinari, *Tort Indemnity in California, supra,* 8 Santa Clara Law. 159, 166.)

Nevertheless, the sounder view is that ''. . . The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, *without active fault* on his own part, has been compelled, by reason of some legal obligation to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law. . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . .'' (Italics added.) (*Builders Supply Co.* v. *McCabe,* 366 Pa. 322, 325-326, 328

[77 A.2d 368, 370, 24 A.L.R.2d 319]; *American Can Co.* v. *City & County of San Francisco,* 202 Cal.App.2d 520, 525 [21 Cal.Rptr. 33]; *Pierce* v. *Turner,* 205 Cal.App.2d 264, 267-268 [23 Cal.Rptr. 115].)

While *United* contains an in-depth analysis of the law of equitable indemnity, its conclusion that United was entitled to indemnity cannot be justified on the basis of any statutory or higher duty the commercial carrier owed its passengers. In indemnity, the duty always exists, no matter how it is stated or defined. Concurrent negligence of two or more persons is always a factor; otherwise the doctrine would not come into play.

While the duty of a common carrier towards its passengers has been characterized as one of "utmost care and diligence" (*Finley* v. *City & County of San Francisco,* 115 Cal.App.2d 116, 120 [251 P.2d 687]; *Frost* v. *Los Angeles Ry. Co.,* 165 Cal. 365, 370 [132 P. 442]) and such care is synonymous with the "highest degree of care" (*Osgood* v. *Los Angeles etc. Co.,* 137 Cal. 280, 281 [70 P. 169, 92 Am.St.Rep. 171]), the mere existence of the duty does not, standing alone, justify the application of the indemnity doctrine. The claimant must also be free of active participation in the wrong— free of "active fault"—which caused the damage to the third party. (*San Francisco Examiner Division* v. *Sweat,* 248 Cal. App.2d 493, 497 [56 Cal.Rptr. 711].)

In the pleadings before us, we are confronted with a factual situation involving a collision between a moving train and a moving truck which resulted in injuries to the carrier's passenger. Both the carrier and the trucking company owed the passenger the duty to exercise care so as to avoid causing her injury; Santa Fe's duty being one of "utmost care" and Whitehead's duty being one of "ordinary care." In her complaint plaintiff maintains that Santa Fe and Whitehead were negligent in the operation and maintenance of their respective train and truck. In the event Santa Fe is determined to be liable in the principal action, such liability could only attach because of its own delict in operating or maintaining its train and signal equipment—not because of any wrong on the part of Whitehead. Consequently, Santa Fe is not being exposed to liability for Whitehead's negligence. In the event both Whitehead and Santa Fe are held liable as joint tortfeasors, such liability would only result because of their concurrent, separate acts of negligence. In a collision between a moving train

and a moving truck, contribution would constitute an adequate remedy. The fact that Whitehead's negligence might prove to be greater than Santa Fe's is of no significance as the difference in the degrees of negligence [comparative negligence] of tortfeasors is inconsequential under the law of equitable indemnity. An indemnity claimant may not recover even though the other tortfeasor's negligence is greater. (*King* v. *Timber Structures, Inc., supra,* 240 Cal.App.2d 178, 182.)

Santa Fe's reliance on *Cobb* v. *Southern Pac. Co.,* 251 Cal. App.2d 929 [59 Cal.Rptr. 916], a contribution case, is likewise unconvincing inasmuch as the claimant therein was actively negligent in inflicting the harm, and the party against whom the indemnity was sought was only secondarily liable in failing to discover a defect or remedy a dangerous condition caused by the negligent act of the claimant.

The trial court acted with propriety in sustaining the demurrer to the cross-complaint inasmuch as an action for indemnity may be dismissed where the facts pleaded reflect that the claimant was concurrently and actively negligent in a situation involving a collision between two vehicles. (See *American Can Co.* v. *City & County of San Francisco, supra,* 202 Cal.App.2d 520.)

Judgment affirmed.

McCabe, P. J. ,and Tamura, J., concurred.