[Civ. No. 48155. Second Dist., Div. Four. Feb. 9, 1977.]

SECURITY MUTUAL CASUALTY COMPANY,
Plaintiff and Appellant, v.
TRANSPORT INDEMNITY COMPANY et al.,
Defendants and Respondents.

COUNSEL

Cummins, White & Breidenbach, Cummins, White, Yokaitis & Rylaarsdam and W. F. Rylaarsdam for Plaintiff and Appellant.

Dryden, Harrington & Swartz, Raphael Cotkin, Peter Abrahams, Jones & Wilson, Lawrence Borys, Lintz, Rothberg & Tanenbaum, Jay J. Tanenbaum, Powers & Tilson and J. Lane Tilson for Defendants and Respondents.

## OPINION

**DUNN, J.**—This is an appeal from an order of dismissal ("judgment," Code Civ. Proc. § 581d) following the sustaining of demurrers to plaintiff's third amended complaint.

That complaint alleges as follows:

On November 1, 1957, plaintiff, a reinsurance company, entered into a written contract with defendants Transport Indemnity Company and Transport Underwriters Association (hereinafter Transport). Afterwards, defendants Transport issued a policy of insurance to defendant Tanner Motors Tour, Ltd., which provided that Transport would indemnify Tanner for any liability in connection with, or arising out of the use of, a certain passenger bus and to defend Tanner in connection with any claims made asserting such liability. The risk thus insured by Transport was reinsured by plaintiff under the earlier reinsurance policy.

On May 4, 1962, the bus that was insured by Transport and reinsured by plaintiff was involved in an accident. Transport settled various claims, but did not settle the claim made by Nettie Gelfand, a passenger. Since Transport's retention was exhausted in settling the other claims and in paying judgments, plaintiff, the reinsurer, defended Tanner in an action brought by Nettie Gelfand and her husband in the United States District Court for the Eastern District of New York.

The bus had been designed and manufactured by Flxible Company, and the accident was caused by a defect in the bus. Plaintiff, the reinsurance company, alleges that, but for the conduct of defendants in giving Flxible Company a general release in its own behalf and on behalf of Tanner, releasing Flxible from any liability for the accident, plaintiff would have been able to assert a claim for indemnity against Flxible for any liability to the Gelfands. Because of the release, the United States District Court held that plaintiff Security could not maintain a cross-action for indemnity against Flxible; that decision was affirmed on appeal.

The first and second causes of action deal with a breach of Transport's contractual duty to plaintiff of good faith and fair dealing and Transport's negligence in releasing Flxible, proximately resulting in damages to plaintiff.

The third cause of action alleges that Tanner breached its contractual duty of good faith and fair dealing to plaintiff; the fourth alleged that Tanner was negligent to plaintiff; the fifth that Tanner breached the contractual duty of good faith to Transport, and that plaintiff, as a transportation insurer, is subrogated to Transport's claim against Tanner; the sixth cause of action alleges that Tanner was negligent as to Transport and plaintiff is subrogated to Transport's claim against Tanner.

In particular:

The third cause of action alleges that Tanner was the third party beneficiary of the reinsurance policy, and that Tanner, therefore, owed plaintiff a duty to act in good faith and deal fairly, and that the giving of the release breached that duty.

The fourth cause of action alleges that Tanner acted negligently toward plaintiff, and is based on the same facts as the third cause of action.

The fifth and sixth causes of action are based on a breach of duty by Tanner to Transport, and allege that plaintiff is subrogated to Transport's rights against Tanner for breaching Tanner's duty of good faith and to Transport's rights against Tanner for negligently giving the release.

The seventh through tenth causes of action are against Longnecker, the attorney retained to represent some or all of the parties.[1]

The seventh and eighth causes of action assert that Longnecker was retained to represent plaintiff, among others, and was negligent. The ninth cause of action alleges that Longnecker is liable to Transport for negligence and that plaintiff is subrogated to Transport's claim. The 10th cause of action is that Longnecker is liable to Tanner for negligence and that Transport is subrogated to Tanner's rights.

The 11th and 12th causes of action are directed against all defendants. Plaintiff sought damages for negligence in the 11th cause of action and declaratory relief in the 12th cause of action.

---

[1]Plaintiff alleges Longnecker was hired to represent interests of all parties.

The only issues before this court are whether the complaint states a cause of action against any of the defendants, whether the action is barred by the statute of limitations, and whether the complaint is uncertain as to defendants Longnecker and Transport.

## I

██ Plaintiff's first argument is that the failure to draw a distinction between Transport Underwriters Association and Transport Indemnity is not fatal to its case. It is true that Exhibit A, which is incorporated in the complaint, shows that the contract of reinsurance was entered into between plaintiff and Transport Underwriters Association, but in paragraph 6 of that complaint plaintiff has also alleged that the contract was entered jointly with Transport Indemnity and Transport Underwriters Association on the one hand, and plaintiff on the other hand. Whether Transport Underwriters was Transport Indemnity's agent is a matter of proof to be determined later. Plaintiff need not allege agency, and only need allege the ultimate fact of the making of the contract. (See *Resetar* v. *Leonardi* (1923) 61 Cal.App. 765, 767 [216 P. 71].) Since the allegations in the complaint must be taken as true for purposes of demurrer, the failure to distinguish between Transport Underwriters and Transport Indemnity does not render the complaint defective.

## II

### TRANSPORT INDEMNITY COMPANY

Plaintiff Security argues that Transport Indemnity, in its capacity as plaintiff's insured, owed plaintiff a duty of good faith and fair dealing. There is language in *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198][2] to support the concept that the duty runs from the insured to the insurer, as well as from the insurer to the insured. But that language is dicta, and that case actually dealt with the duty of the insurer to the insured. The covenant of good faith and fair dealing generally relates to an insurer's special relationship to the insured and the special implied-in-law duties toward the insured. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 403, 404 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

[2]In *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198], the court noted: "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. [Citation.] This principle is applicable to policies of insurance."

Plaintiff Security next argues that Transport Indemnity's conduct in releasing Flxible was a destruction by an insured of the insurer's subrogation rights. Plaintiff alleges that Tanner was entitled to be indemnified by Flxible. An insurance carrier of an indemnitee is subrogated to the right of the latter to obtain indemnification from an indemnitor whose active negligence, operating concurrently, caused the loss. (*Pylon, Inc.* v. *Olympic Ins. Co.* (1969) 271 Cal.App.2d 643.)

Transport's argument, that the doctrine of equitable subrogation is inappropriate under the facts of this case, is well taken. Transport Indemnity suggests that Tanner had no right to be indemnified by Flxible, and therefore giving the release to Flxible is irrelevant. Transport Indemnity relies on *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco* (1968) 267 Cal.App.2d 881 [73 Cal.Rptr. 660], to support the proposition that Tanner had no right of indemnification from Flxible. In *Lan Franco* an injured train passenger sued the Santa Fe Railway and a truck driver, and the railway cross-complained against the truck driver and truck company, alleging that the railway was negligent only because of the high duty of care owed to its passengers, whereas the truck driver was primarily negligent. The *Lan Franco* (267 Cal.App.2d) case is analogous to the case at bench in that, in both cases, the party (Tanner) seeking indemnity was a common carrier, subject to the high duty of care imposed on such carriers.

In *Lan Franco,* the appellate court held that (p. 884): "The sole issue on review is whether the cross-complaint states a cause of action for noncontractual implied indemnity inasmuch as no contractual relationship existed between the parties." Other than that statement, the appellate court did not state, in so many words, that no "relationship" (*i.e.*: vendor-vendee, owner-contractor, etc.) was alleged to have existed between the trucking company and the railway. Such seems necessary to an equitable right to recover, as the (p. 886): "right to noncontractual implied indemnity rests upon *equitable* considerations. [Citation.] The right is restitutional in nature and is based on inherent injustice. [Citation.]" (Italics in original.)

Rules regarding prerequisites to indemnity are stated in *Lan Franco* (267 Cal.App.2d at pp. 886-887) as follows: "Notwithstanding the uncertainty generated by the . . . terminology, two critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in California: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the

injured party; and (2) it must appear that the claimant *did not actively nor affirmatively participate* in the wrong. [Citation]." (Italics in original.) And (on p. 889) the following appears: "the mere existence of the duty does not, standing alone, justify the application of the indemnity doctrine." Again, on the same page, the court states: "In her complaint plaintiff maintains that Santa Fe and Whitehead were negligent in the operation and maintenance of their respective train and truck. In the event Santa Fe is determined to be liable in the principal action, such liability could only attach because of its own delict in operating or maintaining its train and signal equipment—not because of any wrong on the part of Whitehead. Consequently, Santa Fe is not being exposed to liability for Whitehead's negligence. In the event both Whitehead and Santa Fe are held liable as joint tortfeasors, such liability would only result because of their concurrent, separate acts of negligence."

Since we affirm the trial court because no right of indemnity exists, we need not consider other points raised by defendants, such as: whether the complaint is barred by the statute of limitations or is uncertain as to Longnecker and as to Transport.

The judgment is affirmed.

**JEFFERSON (Bernard), J.**—I concur in the result reached by Justice Dunn of affirming the order of dismissal following the sustaining of defendants' demurrers to plaintiff's third amended complaint.

Plaintiff contends that its failure to draw a distinction in its complaint between defendant Transport Underwriters Association and defendant Transport Indemnity is not fatal to a valid statement of its causes of action. This contention is unacceptable in light of the fact that the demurrers to plaintiff's complaint were both special and general demurrers. A copy of the contract of reinsurance, attached to the complaint as an exhibit and incorporated therein by reference, shows that the contract was entered into between plaintiff and Transport Underwriters. In one paragraph of the complaint, however, plaintiff alleges that the contract was entered into by plaintiff as one party with Transport Indemnity and Transport Underwriters "jointly" as the other party.

Plaintiff asserts that its complaint was good against demurrer without any allegation of agent-principal relationship between Transport Underwriters and Transport Indemnity since there was an allegation of the

ultimate fact of the making of the contract with defendant Transport Indemnity—a nonsignatory party to the contract. Plaintiff's reliance for this view on *Resetar* v. *Leonardi* (1923) 61 Cal.App. 765 [216 P. 71] is without substance. It is true that *Resetar* states that "in an action based upon a contract made by an agent it is proper to allege that it was made by the principal." (*Resetar, supra,* 61 Cal.App. 765, at p. 767.) For this pleading rule, *Resetar* relies upon *McGibbon* v. *Schmidt* (1916) 172 Cal. 70 [155 P. 460].

But the *McGibbon* court points out that an allegation that a contract signed by one person was in fact the contract of another as a principal does not make a complaint containing such an allegation valid as against a special demurrer. Thus, the *McGibbon* court stated: "But where, as in the case here, the pleading shows that the agent alone signed the contract sued on, we are not prepared to say that the further statement that it 'was in fact the contract of the defendant, duly authorized by him' is not faulty, as being a conclusion of law." (*McGibbon, supra,* 172 Cal. 70, at pp. 73-74.) *McGibbon* then proceeded to add: "But even if we concede that the complaint was defective in this particular, and that the *defect* may be reached *without a special demurrer,* we do not deem the ruling sufficient cause for reversal." (*Id.,* at p. 74.) (Italics added.)

In the case at bench, the allegation that the reinsurance contract in issue was a joint contract of Transport Underwriters and Transport Indemnity, although signed solely by Transport Underwriters, was clearly subject to the defendants' special demurrers if not to their general demurrers. The trial court's order sustaining the demurrers must be interpreted as referring to both the *special* and *general* demurrers in view of the language of the minute order: "All demurrers are sustained as to all causes of action per points and authorities *and* AT & SF v. Lan Franco, 267 CA2nd 881." (Italics added.) In light of the *McGibbon* case, having been given an opportunity to amend its complaint upon the demurrers being sustained and, having failed to do so, plaintiff's argument that its conclusionary allegations were good against both the general and special demurrers is simply devoid of merit.

Plaintiff Security argues that Transport Indemnity, in its capacity as plaintiff's *insured,* owed plaintiff, the insurer, a duty of good faith and fair dealing. Justice Dunn's opinion rejects this argument by stating that the concept that an *insured* owes a duty of good faith and fair dealing to an insurer is derived from language used in *Comunale* v. *Trader & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198], but that

the language in *Comunale* leading to this view is dicta since the *Comunale* case actually dealt with the duty of the insurer to the insured.

I agree that the contract in *Comunale* concerned the covenant of good faith and fair dealing on the part of an insurer towards its insured. But it is my view that this is a well-settled rule of law that is applicable to each party *in every contract* and does not depend at all on any special relationship that exists between an insurer and an insured in insurance contracts. The rule of law that there exists as a part of *every contract* a covenant of good faith and fair dealing which imposes a duty upon each party not to do anything to injure the right of the other party to receive the benefits of the agreement, has been announced and applied in a number of *noninsurance* contracts.

Thus, with respect to a written agreement relating to the production and sale of sugar beets which contained a discretionary power vested in one of the parties, it was stated that "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." (*Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)

In *Brawley* v. *Crosby etc. Foundation, Inc.* (1946) 73 Cal.App.2d 103 [166 P.2d 392], plaintiff and defendant had entered into a contract wherein plaintiff granted to defendant an exclusive license to exploit, manufacture and sell a rotary pump invention. Plaintiff claimed that the contract was invalid because it did not impose on defendant any *obligation* to use efforts to exploit, manufacture and sell the pump. In rejecting plaintiff's contention, the court stated: "In this, as in every contract, there is the implied covenant of good faith and fair dealing; that neither party will do anything that would result in injuring or destroying the right of the other to enjoy the fruits of the agreement. [Citations.] The law will therefore imply that under its agreement appellant was obligated in good faith and by its reasonable and best efforts to develop, exploit, produce and make sales of the rotary pump in question." (*Brawley, supra,* 73 Cal.App.2d 103, at p. 112.)

Examples of other cases similar to *Brawley* in which the covenant of good faith and fair dealing has been imposed with respect to noninsurance-type contracts are *Brogdex Co.* v. *Walcott* (1954) 123 Cal.App.2d 575 [267 P.2d 28] and *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751 [128 P.2d 665]. It is my view, therefore, that

plaintiff makes a valid assertion in alleging that, as a part of its reinsurance contract with Transport Underwriters, Transport Underwriters, as the insured, owed to plaintiff Security, as the insurer, an obligation of good faith and fair dealing.

The major issue involved before us, however, is whether plaintiff has stated a good cause of action for a breach of this obligation of good faith and fair dealing. The breach urged is that Transport Indemnity executed a release to Flxible which constituted a destruction by the insured (Transport Indemnity) of the subrogation rights of plaintiff, the insurer. The release involved was declared valid in *Gelfand v. Tanner Motor Tours, Ltd.* (2d Cir. 1971) 450 F.2d 786, 787-788, in which the court stated: "The issue presented is the effect of a general release, executed by Tanner and unambiguous on its face, on Tanner's claim for indemnity by Flxible [the Flxible Company] for liability incurred in a New York action stemming from the same accident in connection with which the release was signed. . . . [¶] . . . Tanner now claims that it can show by extrinsic evidence that the release does not, and was not intended to, bar Flxible's liability for indemnity on any judgment the Gelfands are awarded against Tanner. The district court held that such a claim was barred as a matter of law. We agree."

It is plaintiff's contention that its complaint sets forth a good cause of action for breach in alleging that Tanner, the bus owner, whom plaintiff insured by virtue of its reinsurance contract with Transport, was entitled to be indemnified by Flxible, the bus manufacturer, with respect to injuries received by the Gelfands, who were injured as passengers on the Tanner bus and who sued Tanner to recover damages for their injuries.

Transport Indemnity suggests that the doctrine of equitable subrogation is inappropriate under the facts presented in the instant case. Transport Indemnity contends that Tanner had no right to be indemnified by Flxible and, hence, the giving of the release to Flxible is irrelevant and destroyed no subrogation rights against Flxible which could be asserted by plaintiff through Tanner. This argument is tenable and meritorious. Transport Indemnity relies on *Atchison, T. & S. F. Ry. Co. v. Lan Franco* (1968) 267 Cal.App.2d 881 [73 Cal.Rptr. 660], as supportive of the proposition that Tanner, and hence plaintiff Security, had no right of indemnification from Flxible. In my view, the *Lan Franco* case, decided on the pleadings, is not properly distinguishable from the case at bench and, hence, the plaintiff's complaint stated no cause of action for equitable indemnity against the defendants.

The allegations in the complaint (cross-complaint) for indemnity in *Lan Franco* were stronger than those in the case at bench. In *Lan Franco* the injured plaintiff filed a lawsuit against Santa Fe and Lan Franco and alleged that her injuries were due to the concurring negligence of Santa Fe and the Lan Franco truck. However, in Santa Fe's cross-complaint for indemnity against Lan Franco, the railroad alleged that its liability was predicated solely upon the fact of its duty to exercise the highest degree of care toward its passengers and that the accident was *solely* and *proximately* caused by the negligence of the truck driver and that Santa Fe's liability would rest solely on the doctrine of its being a common carrier with a higher degree of care. The *Lan Franco* court held that the pleadings, which included plaintiff's complaint against Santa Fe and Lan Franco, as well as Santa Fe's cross-complaint against Lan Franco, indicated that both Santa Fe and Lan Franco could be held liable to plaintiff as joint tortfeasors, with the result that Santa Fe's claim against Lan Franco would be a case of contribution and not indemnity.

In the instant case, we do not have before us the pleadings of the Gelfands, who were injured as passengers on the Tanner bus and who sued Tanner to recover damages for their injuries. In paragraph 10 of the third amended complaint, Security alleges that the Tanner bus accident was proximately caused by a defect in the bus, owned and operated by Tanner, but which was designed and manufactured by Flxible Company, against whom Security claims Tanner had a right of indemnity, and that Security was subrogated to this right. Paragraph 10 further alleges that the accident was proximately caused by the active negligence of Flxible and that Tanner's liability to the Gelfands would be based upon the high duty of care owed by Tanner as a common carrier and that a breach of this duty would amount to only the passive negligence on the part of Tanner.

As I view paragraph 10 of plaintiff's complaint, it consists of nothing but conclusionary statements in exactly the same way as Santa Fe's cross-complaint in the *Lan Franco* case contained only conclusionary statements. The *Lan Franco* court obviously paid no attention to the conclusionary allegations of the right to indemnity contained in Santa Fe's cross-complaint, in light of the allegations in the injured plaintiff's complaint—alleging concurrent negligence on the part of Santa Fe and Lan Franco.

In the case at bench, had plaintiff Security set forth the allegations contained in the Gelfands' complaint against Tanner, we would be in a

position to determine whether the Gelfands' basis of asserted liability against Tanner was that of passive negligence only. In the instant case, the trial judge sustained the demurrers with leave to Security to amend its complaint. Since Security did not amend, it is my view that it is pure speculation to consider paragraph 10 of the complaint as alleging sufficiently that Tanner's liability to the Gelfands would be predicated solely upon passive negligence as contrasted with Flxible's liability based upon active negligence.

The failure and refusal of plaintiff to amend its third amended complaint, although given an adequate opportunity to do so, precludes plaintiff from validly claiming error by the trial court in sustaining defendants' demurrers to the complaint—demurrers that were both general and special—and in the trial court's order of dismissal following plaintiff's failure and refusal to amend.

KINGSLEY, Acting P. J.—I dissent.

■ (1) I concur in the portion of Justice Dunn's opinion that holds that any defect in joining Transport Indemnity is not now significant. The trial court sustained a general demurrer on the authority of *Lan Franco.* The special demurrer, to which Justice Jefferson refers, was thereby rendered immaterial. If the case is remanded, Transport Indemnity may, if it still so desires, press its contention of uncertainty and secure a formal amendment, stating expressly what is clearly inferred, namely that both Transports were agents of each other. The omission of that formal allegation is no ground for affirming a general demurrer.

■ (2) I agree with Justice Jefferson that, under the authority of the cases he cites, Tanner and both Transports had a duty toward Security not to take affirmative action that impaired the subrogation rights of Security as the ultimate insurer.

(3) I base my dissent on my view that Tanner did have a potential cause of action against Flxible, and that *Lan Franco* is distinguishable. In *Lan Franco,* an injured train passenger sued the Santa Fe Railroad and a truck driver; the railroad cross-complained against the truck driver and his employer, alleging that the railroad was only passively negligent but that it was liable, if at all, only because of the high duty of care to its passengers, whereas the truck driver was actively and primarily negligent. *Lan Franco* is analogous to the case at bench only in that, in both

cases, the party seeking (or alleged to have) indemnity was a common carrier, subject to the high duty of care imposed on such carriers. It differs from the case at bench in one essential element—namely whether the indemnitee was actively or passively in violation of that duty. In *Lan Franco*, the appellate court held that, on the pleadings before it, it appeared that the railroad had been actively negligent, saying (at pp. 889 and 890):

"In the event Santa Fe is determined to be liable . . . such liability could only attach because of its own delict in operating or maintaining its train and signal equipment—not because of any wrong on the part of [the truck driver].

". . . . . . . . . . . . . . . . .

"The trial court acted with propriety in sustaining the demurrer to the cross-complaint inasmuch as an action for indemnity may be dismissed where the facts pleaded reflect that the claimant was concurrently and actively negligent . . . ."

In the case at bench, liability to Gelfand was sought to be imposed only on the high duty of a carrier to its passenger. Tanner was not charged with any negligence in operating or maintaining its bus. Since the facts pleaded, unlike those in *Lan Franco*, do not show that Tanner actively or affirmatively participated in the injury to Gelfand, plaintiff has stated a case in which Tanner did have a right to claim indemnity from Flxible.

It follows, on the facts now before us, Tanner did have a right of indemnity against Flxible, that Tanner's insurer would have been subrogated to Tanner's indemnity rights, and that, as Transport's insurer, and the ultimate insurer, that right of subrogation may be asserted by Security.

Security also states a cause of action against Longnecker. The complaint alleges that Longnecker was hired in part to protect Security's interests. Although facts brought out at the trial may or may not support this allegation, for purposes of demurrer, plaintiff's allegations must be accepted as true. Thus, Longnecker's argument that he cannot be guilty of legal malpractice to plaintiff, because a cause of action for legal malpractice may not be assigned is of little aid to Longnecker. Plaintiff does not rely on any effort to "assign" a cause of action for legal

malpractice, but seeks to create liability based on Longnecker's direct duty to plaintiff. If a client retains an attorney to protect others, those others have a right to sue the attorney for malpractice (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161]) and Security alleges that the attorney was hired to protect its interest.

(4) Since my colleagues affirm the trial court in sustaining the demurrer on the authority of *Lan Franco,* they do not reach the issue of the statute of limitations. Since I differ from them in that aspect of the case, I must deal with that issue. I conclude that the statute does not bar the present action.

All defendants allege that the complaint is barred by the statute of limitations. (Code Civ. Proc., § 337.) Where one party is under a duty to indemnify another, the cause of action does not accrue until the second party has been damaged by paying the amount for which the indemnity is sought. (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges, A. G.* (1970) 3 Cal.3d 434 [91 Cal.Rptr. 6, 476 P.2d 406].) Also, a cause of action for malpractice does not occur until the client suffers damages. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433].) Thus, under either the malpractice theory or the indemnification theory, the causes of action did not accrue until payment was made and they are not barred by the statute of limitations.

Defendants distinguish *Gribaldo* on the grounds that *Gribaldo* was a contract to indemnify against loss or damages, rather than, as here, a contract to indemnify against liability. Although the contracts were in fact different in this respect, that difference is insufficient reason to avoid the rule of *Gribaldo.* Although that case did not deal with the statute of limitations or with the issue of when a cause of action accrues, its holding that an indemnitor is not liable for a claim until the indemnitee suffers the loss by being compelled to pay the claim, applies as well to determining when a cause of action arises.

The judgment (order of dismissal) should be reversed.

A petition for a rehearing was denied February 24, 1977, and appellant's petition for a hearing by the Supreme Court was denied April 7, 1977.