[Civ. No. 11440.   Third Dist.   June 21, 1967.]

HOWARD M. COBB, Plaintiff, v. SOUTHERN PACIFIC COMPANY, Defendant and Respondent; GORDON KEETER, Defendant and Appellant.

Rust & Hoffman, Robert Hoffman, Ellis J. Horvitz and Morton Minikes for Defendant and Appellant.

Diepenbrock, Wulff & Plant and James Diepenbrock for Defendant and Respondent.

VAN DYKE, J. pro tem.*—This is an appeal from a judgment of the Superior Court of Sacramento County. Plaintiff Howard M. Cobb filed suit against the Southern Pacific Com-

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

pany seeking recovery under the Federal Employers Liability Act, 45 United States Code Annotated, section 51 et seq., for personal injuries allegedly sustained on or about July 12, 1962. Cobb later amended his complaint joining Gordon Keeter and Drywall Supply Company, Inc., as parties defendant and alleging that all defendants negligently caused plaintiff's injuries. Nonsuit was granted in favor of Drywall Supply Company, Inc. Trial was had to a jury as between Cobb and Southern Pacific and Keeter, and the jury returned a verdict in favor of Cobb and against both Southern Pacific and Keeter. Keeter paid the judgment and then filed proceedings for contribution pursuant to sections 875-878, Code of Civil Procedure. Southern Pacific defended upon the ground that it was the beneficiary of an implied indemnity, running from Keeter to it. The trial court ruled that Southern Pacific Company was entitled to be indemnified by Keeter and denied the motion for contribution.

Cobb was a switchman who was injured while working for Southern Pacific. The injury occurred in an industrial area near North Sacramento called "The Ben Ali Area." Sometime prior to July 9, 1962, Drywall Supply, Inc., had ordered a flatcar load of plasterboard from Kaiser Gypsum Company for resale to Gordon Keeter, and on July 9 a flatcar with a load of plasterboard was spotted by Southern Pacific on a team track in the Ben Ali area. This flatcar load of plasterboard had been shipped by Kaiser Gypsum Company from Antioch, California, and was consigned to Drywall Supply, Inc., in care of Gordon Keeter. The flatcar was equipped with four iron bars ("swaybars"), each of which was nine feet long. These swaybars were permanently secured at the top corner of each bulkhead, approximately seven feet above the flatcar's deck, and when in use extended on a 45° angle down toward turnbuckles which fastened them to the side of the flatcar. The turnbuckles fastening the swaybars in position were designed to be unfastened to permit the bars to fall to a vertical position in order to facilitate the unloading of the plasterboard. Keeter and his employees unfastened each of the four swaybars during the process of unloading the plasterboard. The unloading was completed on July 11, 1962, at about 5 p.m., and between that time and 6 p.m. an employee of Drywall Supply, Inc., telephoned Southern Pacific and requested that it pick up the unloaded flatcar. At about 3:30 a.m. July 12, 1962, Southern Pacific sent a switching crew, including Cobb, and a switch engine with crew to the place

where the flatcar was spotted for the purpose of picking up the flatcar and returning it to Southern Pacific's yards. Except for a standard-size hand lantern carried by Cobb and each of his fellow switchmen, there was no artificial lighting in the area and it was dark. During these switching operations Cobb stepped to the side of the flatcar and pulled the cutting lever to open the couplers that connected the flatcar to an adjacent boxcar that had been spotted along with the flatcar. On signal the switch engine drew the flatcar away from the boxcar. As the two cars separated, Cobb heard a scraping sound, following which he was struck on the head by an object he had not seen. This object was later ascertained to be a swaybar that someone had thrown over the top of the flatcar's bulkhead and left leaning against the adjacent boxcar. As the two cars drew apart this bar fell, injuring Cobb.

The jury found Keeter responsible for the negligent misplacement of the swaybar so that when the cars drew apart it fell, and further found Southern Pacific negligent in failing to discover the misplacement of the swaybar before separating the cars. The jury found that the negligence of Keeter and the negligence of Southern Pacific constituted proximate causes of Cobb's injuries and that in this aspect they were joint tortfeasors.

Keeter contends on appeal that, as a matter of law, Southern Pacific was not entitled to indemnification from Keeter because no special relationship justifying indemnification existed between the two, further that since Southern Pacific on its own motion, withdrew a cross-complaint it had filed against Keeter and therefore withdrew from trial the issue of indemnification, Southern Pacific was estopped as a matter of law to urge indemnification as a defense to Keeter's motion for contribution; and finally Keeter contends that the jury verdict is consistent with the finding that Southern Pacific was actively negligent in the discharge of its duties owing to Cobb, thus barring Southern Pacific from the right to urge indemnity as a bar to Keeter's right to contribution.

▮ It is now well settled that notwithstanding the absence of a contract for indemnity or of some special relationship legally sufficient to raise an obligation to indemnify, there may be a right of indemnification in favor of one of two joint tortfeasors under certain factual situations. This rule is stated in *American Can Co.* v. *City & County of San Francisco*, 202 Cal.App.2d 520, 525 [21 Cal.Rptr. 33], quoting from *Builders' Supply Co.* v. *McCabe*, 366 Pa. 322, 325-326,

328 [77 A.2d 368] : ▮ " ' "The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law; . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . ." . . . ▮ "But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law *or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.*" ' " (These italics supplied.) (See also *Horn & Barker, Inc.* v. *Macco Corp.*, 228 Cal.App.2d 96, 112 [39 Cal.Rptr. 320], and Prosser on Torts (3d ed.) "Indemnity" p. 278 et seq.)

▮ In this case the fault of Southern Pacific Company which rendered it liable to Cobb arose because of a failure to discover or correct the dangerous condition in which Keeter had left the swaybar, thereby failing in its obligation to afford Cobb a safe place to work and safe equipment with which to work. Thus, Southern Pacific's liability was secondary to the primary liability of Keeter and the law raises an indemnity in Southern Pacific's favor.

▮ There is no merit in the second contention of appellant that because Southern Pacific dismissed its cross-complaint for indemnity against Keeter, at the time of the pretrial conference, it is now precluded from asserting a right of indemnification. Keeter's liability to indemnify Southern Pacific Company could not be established prior to the rendition of a judgment against Southern Pacific and likewise Keeter's right to claim contribution could not arise until Keeter and Southern Pacific had suffered a judgment in favor of Cobb, declaring them to be joint tortfeasors. It would have aided no one then for Southern Pacific to have continued on

with its cross-complaint and it was free to dismiss the same without prejudice as it did. Under these circumstances, Southern Pacific's dismissal of its cross-complaint did not bar a defense against a claim for contribution based on a right of indemnity. (3 Witkin, Cal. Procedure (1954) Judgment, § 56, pp. 1940-1941.)

Finally, as to Keeter's contention on appeal that "the jury verdict is consistent with a finding that Southern Pacific was actively negligent in the discharge of its duties owing to Cobb, thus barring Southern Pacific from the right to urge indemnity as a bar to Keeter's right to contribution" the contention is disposed of by what we have heretofore said concerning the right of indemnity raised by the difference in kind between the negligence of Southern Pacific and the negligence of Keeter. The holding of the trial court on proceedings for contribution that the negligence of Southern Pacific was secondary to that of Keeter, thus raising an obligation on the part of Keeter to hold Southern Pacific harmless is factually supported by the record. In addition to the evidence we have stated heretofore, it was given in evidence that it was most unusual and not to be expected that anyone unloading a flatcar with swaybars would purposely and laboriously throw the bar over against the connected boxcar and leave it there instead of simply releasing it and allowing it to drop back into the safe position it was designed to occupy when not being used. Keeter and his employee who assisted him in unloading the flatcar vigorously denied that the swaybar had been placed in its dangerous condition by either of them. But the jury concluded notwithstanding that it had been so placed. The trial court on this record is substantially supported in its determination that under the facts herein disclosed Southern Pacific was entitled to be indemnified.

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 13, 1967.