[Civ. No. 32168.   Second Dist., Div. One.   Oct. 23, 1968.]

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant, Cross-complainant and Appellant, v. FRED R. LAN FRANCO, as Administrator, etc., et al., Defendants, Cross-defendants and Respondents.

John J. Balluff, Matthew H. Witteman, Henry M. Moffat, Neal W. McCrory and John J. Schimmenti for Defendant, Cross-complainant and Appellant.

Chase, Rotchford, Drukker, Bogust & Tucker, Lawrence O. de Coster, Murchison Cumming, Baker & Velpmen, Ronald R. McQuoid and Henry F. Walker for Defendants, Cross-defendants and Respondents.

WOOD, P. J.—The Atchison, Topeka and Santa Fe Railway Company (referred to as Santa Fe) has appealed from an order dismissing its first amended cross-complaint (seeking implied indemnity), after cross-defendants' demurrers thereto were sustained without leave to amend.

The complaint alleged in part that while plaintiff, Mrs. Hoke, was a fare-paying passenger on a train owned and negligently operated by defendant Santa Fe, the train and a truck, owned and negligently operated by Bernard Lan Franco, collided at a railroad grade crossing at State College Boulevard in Anaheim; and as a proximate result thereof plaintiff received bodily injuries. Plaintiff also alleged that, at the time of the collision, Bernard Lan Franco was an employee of defendant Whitehead Construction Company. Plaintiff sought to recover damages for such injuries from defendant Santa Fe, defendant Whitehead Construction Company, and defendant Fred Lan Franco, the administrator of the estate of Bernard Lan Franco, deceased.

Defendant Santa Fe filed a first amended cross-complaint wherein it sought implied indemnity from cross-defendants Whitehead Construction Company (referred to as Whitehead) and Fred Lan Franco, administrator of the estate of Bernard Lan Franco deceased. Demurrers of the cross-defendants were sustained without leave to amend.

The first amended cross-complaint alleges two causes of action. The allegations of the first cause of action are in substance as follows: Cross-defendant Fred Lan Franco is the administrator of the estate of Bernard Lan Franco, deceased. Cross-complainant duly filed a creditor's claim in the estate proceedings. At all times mentioned, Bernard Lan Franco was the owner and operator of a dump truck, was an employee of Whitehead, and was acting within the scope of such employ-

ment; cross-complainant owned railway tracks which crossed State College Boulevard, a four-lane public highway in Orange County, at a grade crossing; cross-complainant owned and maintained signal facilities and related equipment in proximity to the crossing; cross-complainant owned a train. known as the "San Diegan," which consisted of two diesel engines and eight passenger cars; and plaintiff was a passenger on the train. On December 22, 1965, about 12:55 p.m., cross-complainant, through its duly authorized agents and employees, was operating the train "at or about 65 MPH in a southeasterly direction toward and over this grade crossing." At said time and place, cross-defendants so negligently operated said truck in a northerly direction along State College Boulevard and onto the grade crossing, as to cause the truck to collide with the train. Cross-complainant's engineer, exercising due care, applied the brakes of the train at or immediately prior to the collision, but due to cross-defendants' negligence in entering the intersection there was insufficient time to stop the train prior to the collision. The aforesaid negligence of cross-defendants was "active." In this action, if any negligence is proved against cross-complainant, said negligence will be "passive." Any cause of action by plaintiff against cross-complainant is based on the duty to exercise the highest degree of care for her safety owed to her as a paying passenger of cross-complainant. As a proximate result of said negligence of cross-defendants, plaintiff sustained injuries and has filed the complaint to recover damages from cross-complainant. Under the circumstances, cross-defendants are "primarily liable" for the injuries sustained by plaintiff. If plaintiff recovers judgment against cross-complainant, it will only be by virtue of the relationship between plaintiff, as a paying passenger, and cross-complainant, as a common carrier, and the fact that cross-complainant would have been found to have been "secondarily liable" for plaintiff's injuries. Under the circumstances, cross-complainant is entitled to indemnity from cross-defendants for the amount of any judgment rendered herein against cross-complainant, or for the amount of any settlement of plaintiff's claims, as well as for the amount of reasonable attorneys' fees and costs incurred in defending this action. Cross-complainant has demanded that cross-defendants defend the principal action and indemnify cross-complainant for any damages resulting

from the collision, but cross-defendants have refused to defend the action and indemnify cross-complainant.

The second cause of action incorporates therein by reference the allegations of the first cause of action and in addition thereto sets forth allegations for declaratory relief—seeking a declaration that cross-defendants have a duty to indemnify and defend Santa Fe in the principal action and to pay any judgment rendered against Santa Fe, or to pay any settlement which may be consummated.

Appellant Santa Fe contends that its first amended cross-complaint alleges facts sufficient to state a cause of action against cross-defendants for implied indemnity.

A general statement of the principle of implied indemnity for tort liability is that a joint tortfeasor, whose liability is secondary (as opposed to primary) or is based upon imputed or passive negligence (as opposed to active negligence), may be entitled, upon equitable considerations, to shift his responsibility to another joint tortfeasor.

Appellant Santa Fe argues to the effect that under the allegations of its cross-complaint it is entitled to implied indemnity from cross-defendants (truck operator and his employer Whitehead Construction Company), since it has alleged that any negligence on its part would be passive negligence and that it would be only secondarily liable—in that liability on its part would arise only by reason of its duty, imposed by law, as a common carrier to exercise the highest degree of care.[1]

" [W]here each of two persons is made responsible by law to an injured party the one to whom the right of indemnity inures is entitled to shift the entire liability for the loss to the other party." (*Cahill Bros., Inc.* v. *Clementina Co.*, 208 Cal.App.2d 367, 376 [25 Cal.Rptr. 301].) It was stated further in the last cited case (pp. 378-379) : "The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party."

Illustrative of the application of the doctrine of implied indemnity for tort liability is *City & County of San Francisco* v. *Ho Sing* (1958) 51 Cal.2d 127 [330 P.2d 802], which was

---

[1]Section 2100 of the Civil Code provides: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

the first reported case in California applying this doctrine. That was an action by the city to compel defendants (owners of a building adjoining sidewalk) to indemnify the city for the amount paid by it, upon a judgment, for damages to a pedestrian for personal injuries resulting from a fall caused by a crack in a sidewalk skylight over a basement of a building which adjoined the sidewalk. It was held therein that the city was entitled to be indemnified by the owners of the building.

Implied contractual indemnity is not involved here,—the amended cross-complaint pertains to implied non-contractual indemnity. ■ "[N]otwithstanding the absence of a contract for indemnity or of some special relationship legally sufficient to raise an obligation to indemnify, there may be a right of indemnification in favor of one of two joint tortfeasors under certain factual situations." (*Cobb* v. *Southern Pac. Co.,* 251 Cal.App.2d 929, 932 [59 Cal.Rptr. 916].)

In *Aerojet General Corp.* v. *D. Zelinsky & Sons,* 249 Cal. App.2d 604, 607 [57 Cal.Rptr. 701], it was said: "Implied indemnification may rest upon equitable considerations, impelled by a contrast between the secondary, passive role of one tortfeasor and the primary, active role of the other."

■ A person "is actively negligent if he participates in some manner in the conduct or omission which caused the injury. [Citation.] The indemnitee may not then recover even though the indemnitor's negligence was the greater." (*King* v. *Timber Structures, Inc.,* 240 Cal.App.2d 178, 182 [49 Cal. Rptr. 414].)

A judgment dismissing a cross-complaint for implied indemnity was affirmed in *Progressive Trans. Co.* v. *Southern California Gas Co.,* 241 Cal.App.2d 738 [51 Cal.Rptr. 116]. In that case it was said (p. 741), in quoting from *Goldman* v. *Ecco-Phoenix Electric Corp.,* 62 Cal.2d 40, 44 [41 Cal. Rptr. 73, 396 P.2d 377] : " 'In the area of *implied* indemnity one who "personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement" cannot obtain indemnification.' "

■ In the present case Santa Fe alleged, among other things, in the first amended cross-complaint that it owned and maintained signal facilities and related equipment in proxi-

mity to the grade crossing, which was at State College Boulevard, a four-lane public street and highway in Orange County; that Santa Fe was operating the train at or about 65 miles an hour toward and over this grade crossing; that cross-defendants so negligently operated the truck along said boulevard and onto the grade crossing as to cause the truck to collide with the train; that the engineer applied the train brakes at or immediately prior to the collision, but due to cross-defendants' negligence in entering the intersection there was not sufficient time to stop the train prior to the collision; that if any alleged negligence is proved against Santa Fe, the negligence will be passive; that plaintiff, a paying passenger on the train sustained injuries, and she filed an action against Santa Fe; that any cause of action by her against Santa Fe is based on Santa Fe's duty to exercise the highest degree of care for her safety; that under the circumstances alleged, the cross-defendants are primarily liable for the injuries; that if she recovers judgment against Santa Fe it will only be by virtue of the relationship between her, as a passenger, and Santa Fe, as a common carrier, and the fact that Santa Fe would have been found to have been secondarily liable; that Santa Fe is entitled to indemnity against cross-defendants for the amount of any judgment rendered against it, or for the amount of any settlement of the claims involved in the complaint, or any settlement of any judgment, as well as for reasonable attorneys' fees and costs in defending the action.

There was no allegation in the first amended cross-complaint as to the operating condition of the signal facilities which Santa Fe alleged that it owned and maintained in proximity to the grade crossing.

The collision occurred at the place or intersection where the railroad track crossed State College Boulevard in Orange County. The trial court could take judicial notice that that intersection was in the city of Anaheim (a city of more than one hundred thousand population). Santa Fe's brief states that the place of the collision was in Anaheim. The train was moving at or about 65 miles an hour "toward and over" this grade crossing, a four-lane street in the city. The cross-complainant (Santa Fe) actively participated in the collision. Santa Fe owed plaintiff the duty of exercising utmost care. Further allegations of the first amended cross-complaint were, for the most part, conclusions of law—allegations to the effect that Santa Fe's negligence, if any, was "passive"; cross-

defendant's negligence was "active"; that Santa Fe's liability, if any, was "secondary"; cross-defendants' liability was "primary"; and that if plaintiff recovers judgment against Santa Fe, it will only be by virtue of the duty of Santa Fe as a common carrier to exercise the highest degree of safety for plaintiff's safety. The first amended cross-complaint did not allege facts sufficient to show that the liability of Santa Fe, if any, is secondary as opposed to primary; or that its liability, if any, is based upon imputed, constructive, or passive negligence, as opposed to active negligence; or that it is entitled upon equitable considerations, under the principle of implied indemnity, to shift its responsibility, if any, to the cross-defendants. The first amended cross-complaint did not allege facts sufficient to state a cause of action entitling cross-complainant to implied indemnity from cross-defendants. The court did not err in sustaining the demurrers.

The order dismissing the cross-complaint is affirmed.

Fourt, J., and Lillie, J., concurred.