[Civ. No. 44234. Second Dist., Div. Five. Mar. 25, 1975.]

JAMES S. MIZE, as Administrator, etc., Plaintiff and Respondent, v.
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY,
Defendant, Cross-complainant and Appellant;
MILLER-BONSALL COMPANY et al., Defendants, Cross-defendants
and Appellants.

FELDMAN COMPANY, Plaintiff and Respondent, v.
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY,
Defendant, Cross-complainant and Appellant;
MILLER-BONSALL COMPANY et al., Defendants, Cross-defendants
and Appellants.

438

## Counsel

John J. Balluff and Donald W. Ricketts for Defendant, Cross-complainant and Appellant.

Richard G. Flanagan and Allan S. Garber for Defendants, Cross-defendants and Appellants.

James H. Davis and Alfred D. Freis for Plaintiffs and Respondents.

## Opinion

**WHYTE, J.**\*—In the predawn hours of August 30, 1968, one Charles E. O'Dell,[1] while working in the scope and course of his employment with defendant the Atchison, Topeka and Santa Fe Railway Company was riding on the side of a railroad car which became derailed while it was being pushed in a westerly direction along a public street colloquially known as "Coke Alley." On the days immediately preceding the accident the defendants Miller and Walker, as contractors, were engaged in installing asphalt paving on a lot owned by Coca Cola Bottling Company of Los Angeles[2] adjoining the track. After being derailed, the car struck a

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]For convenience throughout this opinion Charles E. O'Dell will be referred to as O'Dell; the Atchison, Topeka and Santa Fe Railway Company, as Santa Fe; Feldman Company, as Feldman; P. J. Walker Company, as Walker; and Miller-Bonsall Company as Miller.

[2]Judgment went in favor of the defendant Coca Cola on the complaints, but against it on cross-complaints filed by it for indemnity. It originally appealed, but no briefs have

building owned by Feldman Company which was situated on the north side of the tracks. O'Dell, who was riding on the northwest corner of this car, was crushed between the car and the building, receiving injuries from which he later died.

Plaintiff Mize[3] as administrator of O'Dell's estate brought suit for the benefit of his heirs for wrongful death against defendant Santa Fe under the Federal Employers Liability Act and against all defendants on the theory of common law negligence. Plaintiff also brought action against defendant Santa Fe for damages sustained by O'Dell before his death for personal injuries.

In a separate action, consolidated for trial, plaintiff Feldman brought action for damages in the nature of lost profits from and damages to its building. This complaint was against all three defendants, Santa Fe, Miller and Walker and sounded in negligence.

The defendant Santa Fe brought a cross-complaint for declaratory relief for a right of indemnity against the other two defendants.

After trial, before a jury, on the issues of liability and damages and before the court sitting without jury on the issue of indemnity, judgments were entered on April 3, 1973, as follows:

In favor of plaintiff Mize and against all defendants for damages on account of wrongful death, $50,000.
In favor of plaintiff Mize and against defendant Santa Fe for personal injuries to O'Dell, $35,000.
In favor of plaintiff Feldman and against all defendants for damages to building, $15,861.22.
In favor of cross-defendants Miller and Walker and against cross-complainant Santa Fe on the cross-complaint seeking indemnity.

been filed either for or against its position and it does not appear to be involved in this appeal, hence no further mention of it will be made. References in this opinion to the defendants as a group will refer solely to the three defendants above mentioned excluding Coca Cola.

[3]Suit was actually brought in the name of Baldo M. Kristovich, the predecessor of plaintiff James S. Mize, as public administrator acting as administrator of the estate of Charles E. O'Dell, but as Mize has now been substituted as plaintiff we will refer to him as if he had been plaintiff throughout.

The defendant Santa Fe satisfied the judgment and made a motion for contribution from Miller and Walker as joint tortfeasors. This motion was granted and a judgment for contribution signed on May 11, 1973.

Defendants and cross-defendants Miller and Walker appealed from the judgments of April 3, 1973 and May 11, 1973. Defendant and cross-complainant Santa Fe appealed from the judgment of April 3, 1973, insofar as it denied cross-complainant relief on its cross-complaint.

*Appeal of Miller-Bonsall Company and*
*P. J. Walker Company from Judgment for Plaintiff*

Miller and Walker urge five grounds for reversal:

(1) The trial court committed prejudicial error by violating the attorney-client and attorney's work product privileges when it allowed plaintiff's counsel to inspect a part of the file of Miller's investigator William Bosley, who was called as a witness by defendants Miller and Walker.

(2) Respondent's attorney was guilty of prejudicial misconduct by making improper appeals for sympathy.

(3) The damages awarded were excessive.

(4) The question of contributory negligence should have gone to the jury.

(5) The trial court erred in allowing Ray Hyson and Charles Hanson to testify as experts.

Warren Bosley was called as a witness for defendants Miller and Walker. He testified that he was an independent investigator who made an investigation on behalf of Miller. On direct examination he testified concerning certain photographs taken in his presence and to personally observing that certain bolts were missing from a fishplate connecting two rails. He was cross-examined extensively regarding his observations of the fishplate, bolts and condition of the rails. He was then asked if he made any attempt to ascertain whether any asphalt had been on the tracks that caused the derailment. He stated he had and was further

examined as to what he had done. In the course of this questioning he testified he interviewed and took statements from Miller's employees and talked by telephone to Mr. Wright, an employee of defendant Walker. All this was done without any objection on the part of defendants Miller and Walker. After this he was further questioned about the photographs. He was then asked, "Q. Following your investigation, did you make any recommendations to Miller-Bonsall regarding this matter?" The attorney, representing defendants Miller and Walker objected, stating, "This is going into the work product and attorney-client privilege." After some discussion during which the court expressed the opinion that the conclusion of the investigator might be irrelevant, counsel stated, "I will withdraw my objection, your Honor." The court nevertheless refused to permit the parties to go into the matter of the opinion of the investigator.

Thereafter the witness was asked if within the last few days he had examined his file and whether it had refreshed his recollection so he could testify. He stated it had, "to some extent." After some discussion, during which the witness stated he could remember his investigation generally, but "As to specific dates and that sort of thing, of course, I could not remember those," without refreshing recollection, the court instructed the witness, "Produce your file, that part which you did read over and refreshed your memory and we will take a look at it." The court was very careful to require the witness to segregate that part of the file which he had actually used to refresh his recollection from that which he had not so used. Only that which the witness stated was used to refresh recollection was exhibited to counsel and ultimately marked exhibit YY. Counsel for Miller and Walker asked to see the material first, but gave no reason why he desired or should be allowed to do so. When the court stated both counsel could look at the material at the same time and instructed them to take it back by the rail to do so, the record reveals the following transpired:

"[COUNSEL]: Your Honor, I would again object to this. There is privileged correspondence that counsel is now looking at and work product.

"THE COURT: Have you seen it?

"[COUNSEL]: I would represent to the court this gentleman did not refresh his memory from this correspondence. The only thing he refreshed it from is his time chart, at least in our conversation this morning that is what he indicated to me.

"[COUNSEL FOR SANTA FE]: The witness testified to the contrary.

."THE COURT: We have heard what he said."

Without giving the number of the section, the trial judge referred to those provisions of Evidence Code section 771 which provide that if a witness, either while testifying or prior thereto uses a writing to refresh his memory as to any matter about which he testifies, such writing must be produced and may be inspected on behalf of the opposing party.[4] Counsel thereupon pursued his objection as follows:

"[COUNSEL]: Your Honor, again I question as to refreshing his recollection. This gentleman earlier said he has a present recollection of the events and did not need these items to refresh his recollection except on a few items as to these few items I have no objection, but to search our files and our investigation, his work product is an attorney-client privilege.[5]

"THE COURT: Objection overruled. The privilege claim is denied."

On appeal counsel strongly urges that in the actions above outlined, the trial court violated appellant's work product and lawyer-client privileges. He overlooks a fundamental and fatal weakness which destroys this claim. Counsel never presented a proper objection to the trial court. It is not enough that he merely state that something is either work product or within the lawyer-client privilege. The burden is upon him to prove the preliminary facts to show that the privilege applies. (*Tanzola* v. *De Rita* (1955) 45 Cal.2d 1, 6 [285 P.2d 897]; see also *Collette* v. *Sarrasin* (1920) 184 Cal. 283 [193 P. 571].)

Evidence Code section 400 defines preliminary fact as a fact upon which depends the admissibility or inadmissibility of evidence and includes therein such facts as show the existence of a privilege. In the comment of the Assembly Judiciary Committee to Evidence Code section 405, it is declared, "Under this code as under existing law, the

[4]Section 771 changed the law to provide that the refreshing memoranda must be produced whether it was used prior to or during testifying.

[5]The objection as stated equates Bosley's entire work product with attorney-client privilege. It in no way calls attention of the trial court to the fact, later referred to, that contained in Bosley's file were memoranda of communications from witnesses which might include confidential statements of employees under the rules laid down in *D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723 [36 Cal.Rptr. 468, 388 P.2d 700].

party claiming a privilege has the burden of proof on the preliminary facts."

Where reports or statements of an employee are concerned *D.I.Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723 [36 Cal.Rptr. 468, 388 P.2d 700], formulates several tests by which the applicability of the lawyer-client privilege on behalf of a corporate employer-client is to be determined. No attempt was made at the time of trial to show that any of these tests were met. (Generally on the burden of proof of the existence of the lawyer-client privilege see Note, 10 Stan.L.Rev. 297.) Belatedly, upon motion for judgment notwithstanding the verdict or in the alternative for a new trial, appellants offered certain declarations designed to establish the necessary preliminary facts required to establish the existence of the claimed privileges. These declarations do not establish error at the time of trial, for the trial court was neither required nor allowed to assume the existence of these preliminary facts in the absence of proof. Nor do they encompass newly discovered evidence which could not have been produced at the time of trial, thereby justifying a new trial.

■ Appellants claim they were foreclosed from making this necessary proof of preliminary fact by the trial court's refusal to allow counsel to approach the bench. Not so. Not only did counsel not indicate to the trial judge why he wished to approach the bench nor ask to present a preliminary matter in the absence of the jury but also he could have presented this evidence in the presence of the jury. Except in certain cases not herein involved, Evidence Code section 402 authorizes the trial court to determine preliminary facts governing the admissibility of evidence either in or out of the presence of the jury. (*People* v. *Mattison* (1971) 4 Cal.3d 177, 187 [93 Cal.Rptr. 185, 481 P.2d 193]; Jefferson, Cal. Evidence Bench Book, p. 305; Witkin, Cal. Evidence (2d ed. 1966) p. 1004.)[6]

■ Furthermore, even if we were to hold that the objection was properly made the privileges were waived.

It seems doubtful if the alleged work product privilege can ever be claimed at the time of trial. It is not one of the privileges enumerated in

---

[6]We are aware of the statement found in *Carlton* v. *Superior Court* (1968) 261 Cal.App.2d 282, 292 [67 Cal.Rptr. 568], that these matters must be determined out of the presence of the jury. In light of the later Supreme Court case we feel that the opinion of the two learned authors on the subject of evidence above referred to is correct and that these matters may be determined in the presence of the jury.

the Evidence Code. Provisions as to work product found in Code of Civil Procedure section 2016 do not use the work privilege and are in the nature of statutory limitations on pretrial discovery. Also it may well be that even if it be deemed there is in fact a work product privilege concerning a report of an investigator it ceases the moment it is determined to use him as a witness, just as it does with the report of an expert. (*Bolles* v. *Superior Court* (1971) 15 Cal.App.3d 962 [93 Cal.Rptr. 719].) In any event it ceases when the witness uses the report to refresh his recollection and then is called and testifies. (*Kadelbach* v. *Amaral* (1973) 31 Cal.App.3d 814, 821-822 [107 Cal.Rptr. 720]; *Kerns Constr. Co.* v. *Superior Court* (1968) 266 Cal.App.2d 405 [72 Cal.Rptr. 74]; and see generally Jefferson, Cal. Evidence Bench Book, § 41.1.) As was stated in *Kerns,* "The attorney cannot reveal his work product, allow a witness to testify therefrom and then claim work product privilege to prevent the opposing party from viewing the document from which he testified;" such a use of the work product rule would be unconscionable.

When the witness states he did use certain documents to refresh his recollection the attorney cannot be heard to say that in fact the witness did not do so. In this case any possible claim of privilege by way of work product was waived.

■ The claim of attorney-client privilege must be considered separately. As suggested in *Kerns Constr. Co.* v. *Superior Court, supra,* 266 Cal.App.2d 405, and held in *Sullivan* v. *Superior Court* (1972) 29 Cal.App.3d 64 [105 Cal.Rptr. 241], the mere fact of allowing a witness to refresh his recollection from a communication by him to his attorney and then calling him as a witness does not necessarily waive the lawyer-client privilege. But said privilege is waived if not claimed at the first opportunity *(Kerns Constr. Co.* v. *Superior Court, supra).* Appellant conceded that the entire file shown the witness was not composed of client-lawyer communications and that part of the documents in the file were subject to inspection without objection. It then became necessary to object to the use of such of the documents as might come within the privilege at the first opportunity to do so. *(Kerns Constr. Co.* v. *Superior Court, supra.)* However, neither when the letter of September 23, 1968, to the use of which appellant now so strenuously objects, nor at any other time did counsel object to the use of a particular document as being a privileged communication. As pointed out above, the witness was examined about taking statements from Miller's employees and Wright without objection.

The objection to the entire file having been properly denied, the objection being too broad and embracing admissible as well as possibly inadmissible evidence, and no specific objections having been made, the objection of attorney-client privilege was thereby waived.

■ Appellants, in their brief, allude to the fact that the cross-examination of the witness Bosley went beyond the scope of his direct examination. No objection on this ground was made in the trial court and such an objection cannot be raised for the first time on appeal. (6 Witkin, Cal. Procedure (2d ed. 1971) p. 4264.)

■ Furthermore, it is not sufficient that appellants merely show error, they must in addition show prejudice. (6 Witkin, Cal. Procedure (2d ed. 1971) p. 4277.) While Evidence Code section 918 provides that a party may predicate error on a ruling disallowing a claim of privilege, there is no provision that such an error is necessarily prejudicial. Evidence Code section 353 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:

"(a). . . . . . . . . . . . . . . . . . .

"(b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

While appellants complain generally that bits and pieces lifted from Bosley's file were used to support respondent's position, only two specific instances are pointed out. The first of these was use of a letter of September 23, 1968, to show that Miller told Bosley that he left the jobsite at 4 p.m. and the job ended and the fellows went home at 6:30. Miller had testified he inspected the tracks about 5 p.m. and then left. It is the alleged impeachment of Miller on this testimony which is relied upon. But Miller had already admitted that there was a crew still working when he left, and other testimony established that the crew left at 6:30. It does not appear that the jury could have placed any significance on the conflict as to whether the leaving actually happened at 4 or 5.

The other specific incident was that the witness stated it was "possible" that he himself reported that the contractor's employees admitted to him that they saw a pile of rubble near the railroad tracks prior to the time of the accident. No specific document or report containing this admission was referred to. There was substantial evidence of the existence of this rubble entirely separated from Bosley's testimony. Bosley's statement that it was possible that the contractor's employees admitted seeing it, as they must have if it was in fact there, could not have affected the verdict.

Any evidence elicited by the use of Bosley's file was at most cumulative. It could have been stricken out in its entirety without affecting the results of the trial. Under such circumstances its admission, even if it were improper, and we have pointed out above it was not, would not constitute prejudicial or reversible error. (*Inouye* v. *McCall* (1939) 35 Cal.App.2d 634 [96 P.2d 386].)

Appellants' next claim of prejudicial error is misconduct of plaintiff's counsel in appealing to the sympathies of the jurors. All of the incidents occurred in reference to Mona Louise Jones, the divorced wife of O'Dell and mother of his surviving sons.

■ First, appellants, at trial, unsuccessfully objected to testimony of the witness Dickhout that O'Dell continued to show affection for his ex-wife up to the time of his death. This fact had relevancy as reflecting the nature of the deceased, to throw light on what his sons might reasonably expect from him. Even if considered immaterial and hence improper, it would not be of the prejudicial nature which would warrant a mistrial or a retrial.

■ Two allegedly improper questions were asked Mrs. Jones while she was on the witness stand.[7] The first of these was "Since the time of his [O'Dell's] death, have you had a nervous breakdown?" The trial judge immediately instructed the jury that any inferences from the question were to be put out of their minds and that Mrs. Jones' situation as such had no relevance to the issues. Later, on cross-examination, when she was having difficulty remembering dates, the witness volunteered "I have had a nervous breakdown and it is very hard to remember these

---

[7]A strong argument can be made that the physical and mental conditions of Mrs. Jones and her husband were relevant as showing that the surviving sons could not rely on her for support, advice and training, thereby increasing their need for the decedent's reasonably expected assistance in these fields. However, the trial court treated the questions as improper and we shall do likewise.

things." The court immediately granted a motion to strike this testimony. The second improper question was, "Is your husband in good health?" To which the witness answered, "No, sir, he is not." This time the trial court rebuked plaintiff's counsel for asking the question and admonished the jury as follows:

"The problems that the Jones' family has at home has nothing to do with the right of recovery of the sons of Mr. O'Dell and you are to put out of your mind any inference from that question."

Appellants contend that the mere asking of these questions plus the volunteered statement by the witness constituted such prejudicial error that the harm was not and could not be erased by the trial judge's admonitions. The bulk of plaintiff counsel's argument to the jury was not recorded and nothing has been brought to this court's attention to indicate therein any play for sympathy because of Mrs. Jones' condition. In the limited portion of the argument which was reported, no objection was made to any of counsel's remarks on the issue of the amount of a fair recovery.

"It is the well-established rule that a trial judge, who has witnessed all the circumstances surrounding the alleged misconduct, is in a better position than an appellate court to determine whether or not the jury was prejudicially influenced, and its verdict the result of the asserted misconduct of counsel, and 'his conclusion in the matter will not be disturbed unless, under all of the circumstances, it is plainly wrong.' " (*Music* v. *Southern Pacific Co.* (1949) 91 Cal.App.2d 93, 98 [204 P.2d 422].)

Where as here the alleged misconduct was urged as a ground for granting a new trial and the motion is denied the trial court must have found that no prejudice was suffered as a result of the matters complained of. Even though some of the remarks of counsel constituted misconduct, the trial court's conclusion that no prejudice resulted should not be disturbed by an appellate court except in highly unusual cases. (*Lafargue* v. *United Railroads* (1920) 183 Cal. 720 [192 P. 538].)

The alleged misconduct is similar to that in *Hart* v. *Wielt* (1970) 4 Cal.App.3d 224 [84 Cal.Rptr. 220], where the items were few, incidental and in one case voluntary and unexpected, allowing an appellate court itself to determine they were nonprejudicial. In any event, it is not a case

where this court should overturn the considered opinion of an experienced and able trial judge that no prejudice occurred.

■ Appellants' third contention is that the damages were excessive. No complaint is made concerning the damages awarded plaintiff Feldman. While appellants refer to a total verdict of $100,000[8] for two boys, Miller and Walker were not parties to the verdict based upon pain and suffering of the decedent during his lifetime. Whether it was excessive is no concern of theirs. The only verdict against which they are in a position to complain is the one for $50,000 for wrongful death.

■ The remedy for excessive verdict is largely committed to the judge who tried the case. An appellate court may only interfere when the facts are such that the excess appears as a matter of law or are such as suggest at first blush, passion, prejudice or corruption on the part of the jury. (*Brown* v. *Boehm* (1947) 78 Cal.App.2d 595 [178 P.2d 49].)

■ The pecuniary loss referred to in Code of Civil Procedure section 377 may be either a loss arising from deprivation of something to which the heirs would have been legally entitled had the person lived, or a loss arising from a deprivation of benefits it could reasonably be expected such heirs would have received from the deceased had his life not been taken, or both. (*Karwoski* v. *Grant* (1938) 30 Cal.App.2d 171 [85 P.2d 944].) In such reasonable expectations should be included the value of advice and training and the value of the deceased's society and comfort. (*Syah* v. *Johnson* (1966) 247 Cal.App.2d 534 [55 Cal.Rptr. 741]; *Griott* v. *Gamblin* (1961) 194 Cal.App.2d 577 [15 Cal.Rptr. 228].)

■ Here there is evidence that the decedent had a working life expectancy of 24.93 years and was earning $896.39 per month at the time of his death. The elder son was just under 17 years of age and the younger, 14 years old. The decedent was legally obligated to pay $20 per month for their support, but often paid substantially more, both in cash and medical bills. He had made periodic gifts to the sons, including giving the older son an automobile. He planned to send both sons to college. Insofar as his own expenses were concerned, the decedent was a relatively frugal man. He was affectionate and deeply interested in his family. His sons were of an age where they had substantial need for his counseling and advice.

---

[8]The original verdict of the jury on the pain and suffering issue was $50,000. It was reduced to $35,000. on stipulation of the parties.

Under these circumstances we cannot say the trial judge was in error as a matter of law in determining that the amounts of the verdict did not exceed the pecuniary loss that the heirs will actually suffer by being deprived of the services, earnings, society, comfort and protection of the deceased, nor can we say the verdict was so excessive as to suggest at first blush passion or prejudice.

In upholding the amount of the award we may rightfully consider the reduced purchasing power of the dollar in recent years (*Tyson* v. *Romey* (1948) 88 Cal.App.2d 752, 758 [199 P.2d 721]) and the sharp increase in wages during the recent past which may be expected to continue into the future.

Appellant's next contention is that the trial court improperly withdrew the issue of contributory negligence from the jury.

The party claiming that a person did not exercise a requisite degree of care has the burden of proof on this issue. (Evid. Code, § 521.) There is no direct evidence concerning the actions of decedent O'Dell at or immediately before the instant of impact. All the evidence shows in this regard is that he was riding on the side of the derailed car adjacent to the Feldman building and at or near the front corner of said car.

At the time appellants requested the instruction on contributory negligence, they were asked by the trial judge what evidence of negligence on the part of decedent they relied upon. Their only response was the speed of the train. As the court correctly pointed out, control of the speed was not within the duties of O'Dell, nor is there any showing it could have been effected by him.

Now, on appeal, it is contended that the jury should have been allowed to infer from the evidence that O'Dell had ability to avoid the accident and failed to do so because of negligent inattentiveness. But there must be substantial evidence to support an inference. It may not be based upon suspicion alone, or on imagination, speculation, supposition, surmise, conjecture or guess work. (*Eramdjian* v. *Interstate Bakery Corp.* (1957) 153 Cal.App.2d 590 [315 P.2d 19]; *Reese* v. *Smith* (1937) 9 Cal.2d 324 [70 P.2d 933]; see also *Krause* v. *Apodaca* (1960) 186 Cal.App.2d 413 at p. 418 [9 Cal.Rptr. 10].)

The only evidence which it is claimed warranted the drawing of such an inference is the presence of feeble lighting in the vicinity and

from a lantern Mr. O'Dell carried similar to a lantern carried by the witness Jones, which the latter testified illuminated things so you could see six to ten feet, but "couldn't see anything clear," and the fact that Jones was able to escape by jumping and falling away from the tracks.

Jones was not situated as was O'Dell. O'Dell was in a position which placed his body between the side of the car and the Feldman building. Jones was not. Just what, if anything, O'Dell did to escape his peril is not shown by the evidence. To conclude from the fact that Jones, who was in a more favorable position, was able to escape injury, that O'Dell also could have done so would be sheer conjecture. There was no error in withdrawing the issue from the jury.

■ Finally, appellants contend that the witnesses Ray Hyson and Charles Hanson should not have been allowed to testify as experts as to what in their opinion caused the derailment.

Mr. Charles Hanson was division engineer for the Santa Fe Railroad, responsible for the construction and maintenance of all fixed facilities, which includes all tracks and their appurtenances, and who had investigated over 100 derailments.

Mr. Ray Hyson had railroaded 22 years for the Santa Fe, was at the time of the accident engine foreman and had seen or been present at approximately 50 derailments.

Appellants in their reply brief concede that the responsibility for determining the competency and qualifications of an expert witness rests initially with the trial court and its decision will not be disturbed unless there has been an abuse of discretion. (*Crooks* v. *Pirrone* (1964) 228 Cal.App.2d 549, 553 [39 Cal.Rptr. 622]; *Mirich* v. *Balsinger* (1942) 53 Cal.App.2d 103, 115 [127 P.2d 639].)

There appears to be no abuse of discretion in determining that each of these witnesses had sufficient expertise to express an opinion on the cause of a derailment. In fact appellants made no objection to Hanson's qualifications when he first expressed his opinion that a clump or chunk of asphalt on the rails was the cause of the derailment; only considerably later on cross-examination was any question of his qualifications raised.

■ Appellants' chief objection to the testimony of these witnesses is that neither witnessed the derailment and that their opinions were not

based on matter "that is of a type that reasonably may be relied upon by an expert in forming an opinion." (Evid. Code, § 801, subd. (b).)

Hyson was at the scene of the derailment after dark the night before the accident occurred and observed conditions then; he was again at the scene shortly after the derailment and while the cars were still in the position where they had come to rest and again observed conditions of the track and took photographs thereof. His opinion was based on his personal observation and photographs of the scene taken by himself and others.

Hanson was at the scene about two hours after the accident and while the derailed car was still off the track. He personally examined the condition of the tracks and personally found and picked up part of the clump of asphalt involved. He also examined photographs taken very shortly after the accident.

Under these circumstances we are unable to understand why the matter relied upon was not of the proper kind.

We find no prejudicial error affecting the wrongful death judgment in favor of respondent Mize. Said judgment should be affirmed.

### Appeal of Appellant Santa Fe from Denial of Indemnity

The defendant Santa Fe appeals from the judgment against it on its cross-complaint, seeking indemnity from its co-defendants Miller and Walker. Appellant's theory is that appellant's negligence was passive while that of its codefendants was active. Santa Fe argues that it was held liable because of its failure to furnish decedent a safe place to work and that such failure consisted solely in failing to discover the dangerous condition created by the spilled asphalt. It relies strongly on *Cobb* v. *Southern Pac. Co.* (1967) 251 Cal.App.2d 929 [59 Cal.Rptr. 916].

Its theory breaks down in two particulars.

First, the trial court found that the derailment was due in part by the asphalt and in part by the condition of the tracks. While the experts for defendants, the contractors on the one hand, and the railroad on the other, each tried to place blame for the cause of the derailment on the other, there is ample evidence to support the trial court's finding. The

rail joint alleged to have been defective was only three or four feet from the location of the asphalt. Had the rails been sound, the asphalt might not have been enough to derail the railroad car. On the other hand, the car might have overcome the effects of the defective rails had it not come upon the added impediment of the asphalt. This possibility seems entirely logical and was conceded, albeit with great reluctance, by Santa Fe's division engineer Charles Hanson.

Second, there is evidence that even if the faulty joint did not contribute, Santa Fe's negligence was not merely passive.[9] There was more than failure to exercise due care in discovering an unexpected condition. There was evidence that the presence of dangerous conditions in the locale due to construction work had been called to the attention of the yardmaster. Nevertheless no inspection was made. The trial court ordinarily determines whether conduct constitutes active or passive negligence as a question of fact. (*Rossmore Sanitation, Inc.* v. *Pylon, Inc.*, 13 Cal.3d 622 [119 Cal.Rptr. 449, 532 P.2d 97]. It could properly determine that Santa Fe was actively negligent in dispatching a switch train into an area of known possible danger without first making an inspection to see if the conditions were in fact safe.

█ If both tortfeasors are actively negligent, contribution, not indemnity is the proper remedy. (*Kerr Chemicals, Inc.* v. *Crown Cork & Seal Co.* (1971) 21 Cal.App.3d 1010 [99 Cal.Rptr. 162].) Indemnity only inures to one who, without fault on his part, has been compelled by reason of some legal obligation to pay damages occasioned by the initial negligence of another. (*Sammer* v. *Ball* (1970) 12 Cal.App.3d 607 [91 Cal.Rptr. 121].) █ If there is active negligence on the part of the carrier, it cannot recover from a joint tortfeasor simply because the law requires a higher degree of care from the carrier. (*Atchison, T. & S. F. Ry. Co.* v. *Lan Franco* (1968) 266 Cal.App.2d 741 [72 Cal.Rptr. 631].)

█ The determination of indemnity is primarily a question of fact for the trial court. We cannot say as a matter of law that the trial judge erred in his determination that indemnity should not be allowed.

The decision against cross-complainant Santa Fe on its cross-complaint for indemnity must be affirmed.

---

[9]The Supreme Court has recently upheld the validity of the distinction between active and passive negligence. (*Rossmore Sanitation, Inc.* v. *Pylon, Inc.*, 13 Cal.3d 622 [119 Cal.Rptr. 449, 532 P.2d 97].

*Appellants Miller and Walker's Appeal
from Judgment of Defendant Santa Fe for Contribution*

Defendant Santa Fe obtained a judgment for contribution against its codefendants Miller and Walker. This judgment was entered May 11, 1973. Appellants Miller and Walker included in their notice of appeal not only an appeal from the judgment of April 3, 1973, in favor of respondent Mize, but also an appeal from the judgment of May 11.

No separate briefs were filed on this appeal and the judgment is not directly mentioned in any of the briefs filed in connection with the Mize appeal or in reply to Santa Fe's appeal from the denial of its cross-complaint for indemnity. We would probably be justified in treating the appeal as abandoned.

However, in its reply brief to Santa Fe's appeal, Miller and Walker do set forth a paragraph stating: "The concurrently negligent employer seeks indemnity or in the alternative contribution. Respondents respectfully submit that 875 Code of Civil Procedure was not intended to, and does not provide for, recoupment by a concurrently negligent employer for its losses, whether such recoupment is termed 'contribution' or 'indemnity.'. . ."

They also quote from *American Can Co.* v. *City & County of San Francisco* (1962) 202 Cal.App.2d 520, 523 [21 Cal.Rptr. 33] as follows: "The Court stated: 'It would seem evident that Section 875 [Code of Civil Procedure] would never be applicable in situations where the injured party is the employee of one of two tortfeasors. . . .' "

Treating these references as an indication that Miller and Walker did not intend to abandon, but rather pursue their appeal from the judgment of May 11, 1973, we will treat the matter briefly.

First it must be pointed out that the quotation from the *American Can Co.* case is incomplete; the entire quotation is: "It would seem evident that section 875 would never be applicable in situations where the injured party is the employee of one of two tortfeasors and the employer has secured workmen's compensation insurance. Since the employee's 'exclusive remedy' against his employer is the right to recover compensation (see Lab. Code, § 3601), he may not bring a tort action against the employer, and the two tortfeasors will never be held jointly liable as

required by Code of Civil Procedure, section 875." (202 Cal.App.2d 520, 523, fn. 2 [21 Cal.Rptr. 33].)

*Chick* v. *Superior Court* (1962) 209 Cal.App.2d 201 [25 Cal.Rptr. 725] makes it very clear that the reason section 875 Code of Civil Procedure is not applicable in such a case is not any policy against contribution, but solely because there never can be a joint judgment against the two tortfeasors because compensation proceedings is the sole remedy against one of them.

Where, as here, Labor Code section 3601 does not apply and the heirs of the employee can and do recover a judgment against two joint tortfeasors, one of which was the employer, the conditions of section 875 are met and there is no reason why contribution should not be allowed.

Appellants argue that this allows a party to profit by his own wrong. This in a certain sense is true in any case under section 875, but as the State Bar, sponsors of the 1937 Tort Contribution Act, stated to the Senate Judiciary Committee: "The ancient basis of the rigid rule against contribution in this type of case is the policy that the law should deny assistance to tortfeasors in adjusting losses among themselves because they are wrongdoers and the law should not aid wrongdoers. But this overemphasizes the supposed penal character of liability in tort; it ignores the general aim of the law for equal distribution of common burdens and of the right of recovery of contribution in various situations, e.g. among cosureties. It ignores also the fact that most tort liability results from inadvertently caused damages and leads to the punishment of one wrongdoer by permitting another wrongdoer to profit at his expense." (1 Sen. J. Appendix (Reg. Sess. 1957) p. 130.)

The fact that an employer's right to reimbursement under Labor Code sections 3852, 3853 and 3856 is defeated when the employee's injuries or death is caused by the concurring negligence of the employer and a third party (see *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641]) does not require the denial of contribution in this case. The right of reimbursement under the Labor Code is a form of action for indemnity. It allows the employer to shift his entire burden to the negligent third party. But shifting the entire blame to a negligent third party where the employer's negligence also contributes to the injury, is a far different thing from allowing a division of liability between two persons both of whose acts contributed to the injury. No unequal protection of the law arises from denying the first and allowing the second.

Section 875 Code of Civil Procedure properly applies in the case at bench, and the judgment of May 11, 1973, should be affirmed.

The judgment of April 3, 1973, is affirmed in its entirety including the denial of indemnity.

The judgment of May 11, 1973, is likewise affirmed.

Respondents Mize and Feldman Company shall each recover costs against appellants Miller-Bonsall Company and P. J. Walker.

Otherwise appellants and respondents Santa Fe and Miller-Bonsall and P. J. Walker shall each bear its own costs.

Kaus, P. J., and Stephens, J., cocurred.